JOSEPHINE RAPOSA *vs.* ARTHUR GUAY.

AUGUST 9, 1956.

PRESENT: Flynn, C.J., Condon, Andrews and Paolino, JJ.

CONDON, J. This is a bill in equity to enjoin the respondent from continuing to trespass on the complainant's land. The cause was heard in the superior court on bill, answer

and proof, and thereafter a decree was entered granting the injunction but requiring the complainant to pay the respondent $1,250 for a partially constructed building which the trial justice found had been erected by respondent on complainant's land "in good faith by reason of an innocent mistake." From such decree the complainant has appealed to this court.

She contends that the trial justice erred in granting respondent affirmative relief, because it was not properly before him on the answer to the bill. She further contends that if such relief were properly before him, the evidence does not show that respondent acted in good faith and as a result of an innocent mistake. On the contrary she claims that the evidence shows a flagrant disregard by him of the property rights of others in the face of warnings that he was building on the wrong tract of land. She also claims that the evidence shows she did not sit back and allow him to make improvements on her land but that she actively voiced her objections thereto.

The bill of complaint alleges that complainant has owned a certain parcel of land on Brayton Road in the town of Tiverton since November 22, 1952; that she received title thereto from Thomas G. Gesner; that respondent Arthur Guay has erected a building on such parcel, made excavations, cut down trees, and committed other trespasses of a continuing nature; and that he threatens further trespasses. It is also alleged in the bill that he was notified of such trespass on March 26, 1953 and ordered to cease; that on numerous occasions prior to such date complainant's husband Joseph S. Raposa, acting on her behalf, also so notified respondent; and that, by reason of respondent's said unlawful acts, complainant fears further like trespasses will be committed by respondent with irrevocable damage to her for which she is and will be remediless at law.

The bill seeks no damages for such trespasses but only

that respondent be restrained and enjoined temporarily and permanently from further trespassing upon or otherwise interfering with complainant's use and enjoyment of her land. After the bill was filed a temporary restraining order was duly entered. Later, after a hearing, such order was continued in effect pending a determination of the cause on the merits.

The respondent filed an answer in which he neither admitted nor denied any allegation in the bill but left complainant to her proof. The answer concluded with a prayer that respondent be dismissed with his costs. However, at the hearing on the merits respondent presented a written motion for leave to amend his answer. This motion is among the papers in the case, but bears no file mark. Over complainant's objection the trial justice granted the motion, but no amended answer was filed and the jacket of the case does not bear any record of the trial justice's action on the motion to amend.

In the circumstances it appears that the allegations in the motion itself were treated as actual amendments to the answer on file. Those allegations are: "1. That the complainant has not come into court with clean hands. 2. That the complainant has been guilty of laches. 3. That the complainant purchased the said lot knowing that the respondent's building was on it, or by the exercise of ordinary care should have known it. Wherefore the respondent prays that he may be granted any affirmative relief as in the circumstances may appear just and reasonable to this Honorable Court." Over complainant's further objection the trial justice allowed respondent to present evidence *de bene* in support of his claim for affirmative relief. The portion of the decree granting respondent relief, from which complainant has appealed, is based upon the evidence received by the trial justice under such procedure. For this reason complainant argues that that part of the decree is against the law.

Such procedure was not in accordance with established rules of equity practice or with the statutes of this state modifying those rules. After respondent filed his answer and complainant did not except or reply thereto within ten days the cause was considered as set down for hearing on the bill and answer. General laws 1938, chapter 528, §8. As the pleadings then stood the only issue raised thereby was whether respondent was guilty of the trespasses alleged and should be enjoined from continuing them. Therefore, at the hearing on the merits complainant had no reason to foresee and prepare to defend other issues involving respondent's claim of right to affirmative relief.

The respondent could have raised such issues by a cross bill. And by virtue of G. L. 1938, chap. 528, §13, he could have raised them in his answer, but if he had done so complainant would have been entitled under §6 of that chapter to written notice of the filing thereof and ten days within which to except or reply thereto. In the absence of a statute granting respondent the right to seek affirmative relief in his answer, ordinarily there is no such right. 30 C.J.S., Equity, §331, p. 750. To serve as a cross bill for that purpose the answer should possess all the elements of such a bill and the cross defendant must be given an opportunity and reasonable time to answer. 30 C.J.S., Equity, §§386, 387, p. 799. The granting of respondent's motion to amend deprived complainant of such rights and compelled her to meet unprepared wholly new issues.

We think the procedure followed here was without warrant of any rule or statute of which we are aware and was prejudicial to complainant's rights. The trial justice was authorized to entertain respondent's motion to amend even after the pleadings had been closed, but he should have required respondent to file a formal amended answer and have fixed a time within which in compliance with the statute complainant could reasonably exercise her right to except or reply or to file an answer to that portion of the

respondent's amended answer which was in the nature of a cross bill. In the circumstances, therefore, we must hold that the portion of the decree granting respondent affirmative relief is illegal and void.

Ordinarily this would be decisive of the appeal before us as a matter of procedure without reference to the merits, but since complainant has come into a court of equity seeking its aid there may be a question whether respondent was entitled to be heard under his answer as filed on the question of complainant's unjust enrichment. It is a well-recognized practice of courts of equity as a condition to decreeing the complainant the relief sought by the bill of complaint to accord to the respondent whatever equitable rights he may have, even though not demanded by a cross bill, and to give him relief to protect and enforce such rights. 30 C.J.S., Equity, §602, p. 993. The basis for such action is the maxim that "He who seeks equity must do equity."

Assuming without deciding that in the circumstances of the case at bar respondent was entitled to invoke that principle, we have inquired into the merits to determine whether the specific relief granted to respondent was contrary to the law or the evidence. After carefully considering the evidence and the law applicable thereto, we are of the opinion that the trial justice erred in ordering complainant to pay respondent $1,250 for the partially completed house which he had mistakenly erected on her land.

It appears from the evidence that such land was originally owned and farmed by Thomas G. Gesner who had a small building or shack thereon. Sometime in the latter part of 1952 complainant, through her husband Joseph S. Raposa, was negotiating to purchase the land. Finally on November 22, 1952 Gesner conveyed it to her by warranty deed. Adjoining it on the south is another tract of land belonging to Edward Burke. The respondent was negotiating during the summer of 1952 to purchase that land and finally on December 17, 1952 obtained a conveyance thereof by deed

of Thomas F. Burke, administrator of the estate of Edward Burke.

A permit to erect a house upon the land was issued to the respondent on June 14, 1952, he having obtained the owner's consent to start building on the land before the deed to him was ready for delivery. The respondent testified that he started to build in July 1952, but a certified copy of the building permit which is in evidence bears the notation, "Not built Sept/52." In any event it appears that on two occasions sometime during the summer of 1952 he started to excavate in two different locations and in each instance found he was on the wrong land. He finally decided, without the benefit of a survey, that the Gesner tract was the Burke land which he had arranged to purchase and he thereupon started to build there.

While respondent was excavating, Joseph S. Raposa told him he was still on the wrong land. He then inquired at the town hall concerning the location of the Burke land and was informed by the town clerk that the town never had a survey made on Brayton Road and that it was "awful hard to tell exactly where the lines were, that is, from my office." The town clerk testified that respondent came to his office two or three times thereafter in the "warm weather," he could not otherwise identify the time, and asked "if there was any way of telling him that was the Burke property"; and that he answered respondent, "we could not without surveying." He testified further that he told respondent the situation down there was confused.

Notwithstanding such information respondent went right on building at the location which he believed was the Burke tract. And he did this in spite of the fact that Gesner also told him that he was on his, Gesner's, land. Gesner testified that respondent thereafter went with him to the town hall and showed him the tax assessors' plat whereon Gesner's tract was marked as south of the Burke tract. Apparently respondent relied upon such plat rather than have a survey

made to determine the precise location of the Burke tract. It developed later that such plat was in error and that the Gesner tract was mistakenly assessed to Burke and the Burke tract to Gesner.

After complainant purchased the Gesner tract her husband told respondent not to continue building there because, from a title search which was made on January 10, 1953 he, Raposa, was convinced that the respondent was on the wrong land. The complainant's husband further testified that respondent told him the title search was no good and that he was a fool to throw his money away on a surveyor. Finally at her own expense complainant had a survey made which definitely disclosed that respondent was not on the Burke tract as he had insisted and as the assessors' plat indicated. Such survey demonstrated that the assessors' plat was erroneous.

On this evidence we cannot agree with the trial justice's conclusion that respondent is entitled to equitable relief because he acted in good faith by reason of an innocent mistake. The fact that he made inquiries at the town hall concerning the location of the land in question is not sufficient in itself to show that he acted with reasonable care and caution. In the face of the town clerk's responses to such inquiries, respondent was clearly put on notice that a survey was necessary to definitely identify the location of the Burke tract. And he was not justified in relying upon the assessors' plat. Such plats are made solely for the convenience of the assessors in performing the duties of their office. They are not a part of the records of land evidence of the town upon which those interested in conveyances of real estate could safely rely. Such records are in the town clerk's office and when that official told respondent the town had never had a survey made on Brayton Road and could not tell from the records in his office exactly where the lines of the Burke tract were, this was notice to respondent that

without the benefit of a survey he would be acting at his peril.

It is true that "hard cases sometimes make bad law." In that sense this is a hard case. It is hard on respondent that he should lose all that he has expended on complainant's land, but to force the complainant, when she has been without fault, to reimburse the respondent for something she did not want is not good law. As was said in *Pinney* v. *Borough of Winsted,* 83 Conn. 411, 414, "Assuming, however, that there were some benefits in fact, the rule is that a trespasser cannot in any event, when compensation is sought for his trespass, be heard to say in defense, or even in mitigation, that he has really benefited the plaintiff by his wrongful acts; he cannot thrust benefits upon the landowner, and then set up the benefits in reduction of the damage caused by these acts."

Here complainant seeks no damages nor does she demand that respondent be made to shoulder the burden of removing his building and restoring her land to its original condition. On general principles she would be entitled to such relief even though respondent had acted in good faith. *Ferrone* v. *Rossi,* 311 Mass. 591. There the court said at page 593: "* * * that the owner of land is entitled to a mandatory injunction to require the removal of buildings and structures that have been unlawfully placed upon his land, and the fact that the plaintiff has suffered little or no damage on account of the offending buildings or structures, or that the wrongdoer was acting in good faith, or that the cost of removing the building or structure will be greatly disproportionate to the benefit to the plaintiff resulting from their removal is ordinarily no bar to the granting of injunctive relief. * * * A continuing trespass wrongfully interferes with the legal rights of the owner, and in the usual case those rights cannot be adequately protected except by an injunction which will eliminate the trespass."

In an earlier case, *Kershishian* v. *Johnson,* 210 Mass. 135,

137, which in some of its aspects was not unlike the case at bar, the same court in granting injunctive relief unequivocally declared: "It is a general principle that where a defendant, without right, without excuse, and without being misled by the speech, silence or conduct of the plaintiff, has attempted to appropriate the plaintiff's property or to interfere with his rights and has changed the condition of his real estate, the defendant is compelled to undo, so far as possible, that which he has wrongfully done affecting the plaintiff and to pay the damages."

With reference to the state of facts before it in that case the court further stated, at page 139: "There is no reason why the plaintiff is not entitled to mandatory relief to the extent of requiring the removal of the defendant's building. The latter went forward in its construction without a survey, or a search for the bounds, or exercising sufficient care to ascertain the precise place of the boundary line. He took his chances in the location of his cottage after having tried in vain to buy land from the plaintiff's predecessor in title * * * ."

On our view of the evidence in the case at bar, we are of the opinion that respondent's claim for affirmative relief under his purported amended answer, assuming he was entitled to have it considered, falls under the rule enunciated above rather than under the doctrine laid down in *McKelway* v. *Armour*, 10 N. J. Eq. 115, and 4 Pomeroy's Eq. Jur. (5th ed.), §1241, which were cited by respondent, or *Lyons National Bank* v. *Shuler*, 199 N. Y. 405, and *McCreary* v. *Shields*, 333 Mich. 290, which were relied upon by the trial justice.

It is clear from such evidence that the respondent here did not act out of such mistake as is recognized by those authorities, but went ahead and continued to expend labor and money on the complainant's land without exercising the care which a reasonably prudent man would have exercised in the light of the information that had come to him

concerning the doubts as to the correct location of his land. "Where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of a legal duty, equity will not interpose its relief." *Riggle* v. *Skill,* 9 N. J. Super. 372, 379. See also 2 Pomeroy's Eq. Jur. (4th ed.), §856. Hence on the above ground as well as on the ground of procedure hereinbefore discussed, the respondent was not entitled to the affirmative relief granted to him.

Upon consideration, therefore, it is our conclusion that the decree appealed from should be modified by striking therefrom the second paragraph thereof, namely, "That the complainant shall pay $1,250.00 to the respondent to compensate him for the value of the improvement made on said lot in the form of a partially completed dwelling house." In all other respects the decree is affirmed.

The complainant's appeal is sustained, the decree appealed from as above modified is affirmed, and the cause is remanded to the superior court for further proceedings.

*Paul M. Chappell,* for complainant.

*Corcoran, Peckham & Hayes, Edward B. Corcoran,* for respondent.