318 A.2d. 469.

BURRILLVILLE RACING ASSOCIATION *vs.*
CHARLES GARABEDIAN.

APRIL 26, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a civil action brought by the plaintiff, Burrillville Racing Association, to permanently enjoin the defendant from entering or remaining upon and enjoying the privileges of the plaintiff's premises known as Lincoln Downs Race Track, located in the town of Lincoln. After a hearing in the Superior Court, the trial justice rendered a decision granting the plaintiff's prayer for a permanent injunction. The case is before this court on the defendant's appeal from the judgment which was entered pursuant to the decision of the trial justice.

The record discloses that plaintiff conducts thoroughbred horse racing events on its premises in Lincoln under authority granted by the state of Rhode Island. The defendant has been a patron of various race tracks in New England, including Rhode Island tracks, for many years. It appears that on September 21, 1966, defendant was ordered by Vincent L. Murphy, agent in charge of the Thoroughbred Racing Protective Bureau, policing authority of the Thoroughbred Racing Association (TRA) in New England, to leave Narragansett Race Track and not to enter the premises of any other track serviced by TRA in the future. TRA is the organization engaged by race track operators,

including plaintiff, to provide security and law enforcement within the track property.

Murphy testified that the reason for such an order to defendant was that, in the judgment of the track management, defendant was considered to be an undesirable person because he was a "ten percenter."[1] The defendant in his testimony admitted he had been advised that he was prohibited from entering race tracks serviced by TRA. He also admitted he knew Lincoln Downs was serviced by TRA. The defendant continued that in 1966 he had been convicted for failure to file federal income tax returns, that in September 1966 he was ordered barred from the other New England tracks serviced by TRA, and that in 1967 he had sought permission to be allowed to return to the tracks serviced by TRA, but permission was refused.

At the hearing, there were admitted into evidence TRA records which disclosed that since May 1969, defendant had been observed at Lincoln Downs a total of seventy-six times and on approximately sixty-six of those occasions, was ordered to leave the premises and not return. On several occasions, according to defendant's own testimony, when he was observed by TRA agents he would move into the crowd or move away before he was apprehended. There is no evidence that defendant was discriminated against on the basis of race, color, religion or country of ancestral origin as those terms are understood in the context of the provisions of G. L. 1956 (1969 Reenactment) chapter 24 of

---

[1] A "ten percenter," in race track language, is a person who cashes winning mutuel tickets for himself and for other people. For this service he would retain a percentage of the winnings depending on his agreement with the other person or persons involved. In cashing such a winning mutuel ticket, it is sometimes required that the party who cashes the ticket fill out an Internal Revenue Service information form in his own name. Under such an arrangement the Internal Revenue Service would have no record of the name of the other party or parties involved or the proceeds received by them.

title 11. It also appears on the record that there was no action taken against defendant under §41-3-18, nor was there a civil action of trespass and ejectment, so-called, instituted by plaintiff against defendant.

The trial justice, relying on *Buenzle* v. *Newport Amusement Ass'n*, 29 R. I. 23, 68 A. 721 (1908), held that the common law of this state permits plaintiff to eject or exclude any person from its premises without having to show cause therefor. He then found that defendant, after being ejected and ordered not to return, did return and continued to return and enter plaintiff's premises, thereby constituting a continuing trespass for which he concluded plaintiff was entitled to the relief sought. An injunction is proper to prevent continuing and repeated trespasses, *Newport Yacht Club, Inc.* v. *Deomatares*, 93 R. I. 60, 171 A.2d 78 (1961); *Raposa* v. *Guay*, 84 R. I. 436, 125 A.2d 113 (1956).

The defendant contends in his appeal that the court erred in granting the remedy sought and advances several arguments in support thereof.

We first consider defendant's argument that in enacting §§41-3-17 and 41-3-18,[2] the Legislature changed the common

---

[2]General Laws 1956 (1969 Reenactment) §§41-3-17 and 41-3-18 read as follows:

"41-3-17. Ejection of undesirable persons—Rights of licensee.—Any licensee hereunder shall have the right to refuse admission to and to eject from the enclosure of any race track where a race meeting licensed under the provisions of this chapter, is being held, any person or persons whose presence within said enclosure is, in the sole judgment of said licensee, its agents or servants, undesirable, and whose presence is inconsistent with the orderly and proper conduct of such race meeting."

"41-3-18. Penalty for refusing to leave.—Any person or persons within said enclosure deemed undesirable by said licensee, its agents or servants or who has been ordered to leave or who has been previously ejected, shall upon refusal to leave be guilty of a misdemeanor, and upon conviction thereof, be punished by a fine of not more than one hundred dollars ($100) or imprisoned not more than one (1) year or both."

law right of the operator of a race track to exclude or eject a person or persons from its premises. This court in *Burrill-ville Racing Ass'n* v. *Mello,* 107 R. I. 669, 270 A.2d 513 (1970), reiterated the common law right of a race track operator to exclude or eject a person or persons from its premises without having to show cause therefor.

We have in the past often stated that it is always presumed that in enacting a statute, the Legislature did not intend to make any alteration in the common law unless the language used naturally and necessarily leads to that conclusion or unless the intent to alter it is clearly expressed. *Jones* v. *Aciz,* 109 R. I. 612, 289 A.2d 44 (1972); *Johnston Businessmen's Ass'n* v. *aaRussillo,* 108 R. I. 257, 274 A.2d 433 (1971); *Bloomfield* v. *Brown,* 67 R. I. 452, 25 A.2d 354 (1942); *Langlois* v. *Dunn Worsted Mills,* 25 R. I. 645, 57 A. 910 (1904).

In enacting §41-3-17 the Legislature authorized a race track operator to eject or exclude a person or persons from its premises who in its sole discretion was undesirable and whose presence would be inconsistent with the orderly and proper conduct of its racing program.

It is clear that the Legislature intended by enactment of §41-3-17 to require that a determination be made that the person to be ejected or excluded is an undesirable person whose presence is inconsistent with the orderly and proper conduct of the racing program. We are therefore constrained to say that the common law right of a race track operator to evict a person or persons from its premises has been changed by the enactment of §41-3-17.

It is now essential that with the enactment of §41-3-17 that the person to be ejected or excluded by a race track operator be determined to be an undesirable person whose presence disrupts the orderly conduct of the race meeting and the burden is on the operator in seeking relief to furnish satisfactory proof that the presence of the person

sought to be ejected or excluded is inconsistent with the orderly and proper conduct of the racing program conducted by plaintiff. The defendant argues that there is no evidence on the record that he disrupted the orderly conduct of plaintiff's business or violated any law while a patron at the track, and he argues that therefore plaintiff was not entitled to the relief he sought. We agree.

The only evidence on the record relative to the defendant's activities on the plaintiff's premises is that the defendant is a "ten percenter". This can hardly be considered competent evidence on which it can be concluded that the defendant's presence on the plaintiff's premises was inconsistent with the orderly and proper conduct of the racing program. The plaintiff has consequently failed to sustain the burden of proof required. There is no basis on which the trial justice could grant the relief sought by the plaintiff and in granting said relief the trial justice committed error.

The defendant's appeal is sustained, the injunction is dissolved, the judgment appealed from is vacated, and the case is remitted to the Superior Court.

Mr. Chief Justice Roberts did not participate.

*Hanson, Curran, Bowen & Parks, William A. Curran* of counsel, for plaintiff.

*Aram K. Berberian,* for defendant.