### The FUND FOR COMMUNITY PROGRESS

v.

### UNITED WAY OF SOUTHEASTERN NEW ENGLAND.

#### No. 95–443–Appeal.

Supreme Court of Rhode Island.

June 25, 1997.

---

Mortimer C. Newton, Providence, for Plaintiff.

David A. Wollin, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

United Way of Southeastern New England appeals from the entry of a preliminary injunction enjoining it from continuing to include and display the name and logo of the Fund for Community Progress in its solicitation materials. It contends here on appeal that the preliminary injunction is tantamount to a prior restraint in violation of its right of free speech guaranteed pursuant to the First Amendment to the United States Constitution as well as constituting an abuse of discretion on the part of the Superior Court trial justice. We disagree with both contentions and affirm the order entered below.

The findings made below reveal that the United Way of Southeastern New England (the United Way) and the Fund for Community Progress (the Fund) are both nonprofit charities that act as "umbrella organizations," collecting money for and distributing it to other affiliated charities. Both organizations offer informational literature to prospective donors regarding the benefits of charitable giving and the type of charitable work performed by their affiliated charities. In addition to providing this literature, the United Way and the Fund conduct work site fund-drives in which they present speakers at places of business or other institutions to discuss charitable giving.

In performing its fundraising activities, the United Way often solicits contributions through the use of donor-choice forms. These forms list the numerous charities on whose behalf the United Way will collect donations. The forms are distributed at various commercial and business institutions and are often presented in conjunction with a United Way speaker. From approximately 1989, the United Way has listed the Fund's name and logo on its donor-choice forms and in its other informational literature. However, unlike the other charities listed on the United Way's donor-choice forms, the Fund has never given the United Way express permission to use its name or logo. Although this casual relationship may initially have been amenable to both the Fund and the United Way, as time progressed, the Fund decided that its charitable philosophy was so sufficiently distinct from that of the United Way that it no longer wished to continue to be affiliated with the United Way and wanted to conduct its own separate solicitation campaigns. As a result the Fund informed the United Way of its interest in having its name and logo removed from certain United Way campaign literature and donor-choice forms. Despite the Fund's insistence that its name and logo be used only as it directed, the United Way nonetheless continued to make full use of the Fund's name and logo without abatement. In a series of letters written in 1993 by Nondas Hurst Voll (Voll), the executive director of the Fund, to the president of the United Way, W. Douglas Ashby (Ashby), Voll finally requested that the United Way discontinue using its name and logo. Ashby, however, rather than follow the Fund's wishes, reiterated to Voll the benefits of being a part of the United Way and the United Way's efforts

to make sure that donors understood the unique goals of the Fund.

The dispute between the parties remained unresolved until 1994 when Voll learned that the Fund's name and logo would be used again, this time on the United Way's 1994 marketing brochure. In response, on July 27, 1994, Voll wrote to Ashby and described the Fund's wishes explicitly:

"The Fund for Community Progress *does not grant permission* to the United Way of Southeastern New England to use the name of, or other information about, The Fund for Community Progress and any or all of its 22 member agencies in any United Way administered campaign or fundraising materials, other than in the State Employees Charitable Appeal (SECA) and the Combined Federal Campaign (CFC) which are managed by People Services, Inc., a subsidiary of the United Way of Southeastern New England."

The United Way did not respond favorably to the Fund's request, and thereafter, in September of 1994, the Fund filed an action in the Providence County Superior Court, seeking both temporary and permanent injunctive relief.

A hearing was held before a justice of that Court on September 26, 1994, on the Fund's request for a temporary restraining order, and after denial thereof the case was assigned for hearing on the Fund's request for a preliminary injunction. Hearings thereon were conducted over the course of the next few months.

At those hearings the Fund asserted that it would be likely to succeed at trial against the United Way on claims of common law unfair competition and tortious interference with advantageous relations. A third claim that the United Way was violating G.L.1956 § 9-1-28 was initially asserted but later withdrawn.

Regarding the unfair competition claim, the Fund asserted that the United Way's activities created public confusion as to the affiliation of the two organizations. The Fund asserted that because many institutions and their donor employees believed that the United Way had permission to campaign for the Fund, many employers would opt to permit only the United Way to conduct work site fund-drives rather than allow the Fund to conduct its own. According to the Fund, the United Way was deliberately attempting to create confusion so as to exclude the Fund from many work sites. In support of its claim the Fund offered testimony from an employee of the Rhode Island Public Transportation Authority (RIPTA) and from an employee of the Cavanagh Co. Both testified that the listing of the Fund in the United Way solicitation literature caused them to question whether the Fund, to which they wished to donate, was a donor option in the United Way solicitation campaign. The Fund also alleged that the harm caused by the United Way's acts of unfair competition affected its good will and unique identity and was thus the type of irreparable injury not compensable by legal damages.

The United Way asserted that its use of the Fund's name and logo for the purpose of informing the public was fully protected speech under the First Amendment and that any injunction prior to publication would amount to an unconstitutional prior restraint. The United Way additionally argued that the Fund had failed to demonstrate its right to a preliminary injunction. It asserted that there was no showing of probable irreparable injury because all moneys collected by the United Way on behalf of the Fund went directly to the Fund without any deduction. The United Way also contended that the Fund had failed to show a likelihood of succeeding on the merits of its claim of unfair competition because it did not demonstrate any likelihood of confusion.

The hearing justice granted the Fund's request for a preliminary injunction, concluding that

"use of the [Fund's] name and logo in the [United Way's] solicitations has had the result, in fact, of excluding the plaintiff from pursuing its own business of making workplace solicitations in some marketplaces, either independently or in a side-by-side solicitation presentation. By virtue of the [United Way's] exploitation of the [Fund's] name and identity as a purported assenting participant in the [United

Way's] fund-raising, the [United Way] has effectively foreclosed any chance the [Fund] might have had to compete in certain marketplaces."

He further found that

"[t]he [United Way's] false and misleading implied assertion that it is authorized to solicit charitable funds on behalf of the [Fund] has harmed the [Fund] by depriving [the Fund] of its distinctive identity in the charitable marketplace. It has further harmed the [Fund] by interfering with its opportunity to compete in the work-site charitable solicitation marketplace as the Court has just pointed out."

On that basis the trial justice concluded that there was a substantial likelihood of the Fund's success on the merits, particularly on its claim of unfair competition and preliminarily enjoined the United Way's use of the Fund's name and logo.

 We note at the outset that in appealing from the grant of a preliminary injunction, the United Way bears a heavy burden. We have long recognized that an application for temporary injunctive relief is "addressed to a trial justice's sound discretion." *Coolbeth v. Berberian,* 112 R.I. 558, 564, 313 A.2d 656, 660 (1974). Upon review, we will not disturb the exercise of a hearing justice's discretion on an application for a preliminary injunction unless it is reasonably clear that the hearing justice illegally exercised his or her discretion, or has abused his or her discretion. *See id.* at 564–65, 313 A.2d at 660; *see also Pawtucket Teachers Alliance Local No. 920 v. Brady,* 556 A.2d 556, 557 (R.I.1989); *Paramount Office Supply Co. v. D.A. MacIsaac, Inc.,* 524 A.2d 1099, 1101 (R.I.1987).

 As a first matter we consider the United Way's contention that the hearing justice in this case abused his discretion in considering the requisite factors in granting the preliminary injunction. Though variously articulated in our decisions, the criteria a hearing justice should consider in deciding whether to grant a preliminary injunction are well settled. *See, e.g., In re State Employees' Unions,* 587 A.2d 919 (R.I.1991). The moving party seeking a preliminary injunc-

tion must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position. *See Brown v. Amaral,* 460 A.2d 7, 10 (R.I.1983); *Rhode Island Turnpike & Bridge Authority v. Cohen,* 433 A.2d 179, 182 (R.I.1981); *Coolbeth,* 112 R.I. at 564, 313 A.2d at 659. The moving party must also show that it has a reasonable likelihood of succeeding on the merits of its claim at trial. *See In re State Employees' Unions,* 587 A.2d at 925; *Pawtucket Teachers,* 556 A.2d at 557; *Coolbeth,* 112 R.I. at 566, 313 A.2d at 660. We do not require a certainty of success. *Coolbeth,* 112 R.I. at 566, 313 A.2d at 660. Instead we require only that the moving party make out a prima facie case. *Id.* at 564, 313 A.2d at 660. Having found a likelihood of success and an immediate irreparable injury, the trial justice should next consider the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief. *In re State Employees' Unions,* 587 A.2d at 925. In considering the equities, the hearing justice should bear in mind that

"the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered." *Coolbeth,* 112 R.I. at 564, 313 A.2d at 659.

 The United Way contends that the Fund failed to show a likelihood of success at the hearing on the merits of its unfair competition claim because it failed to show any likelihood of confusion resulting from the United Way's continued use of the Fund's name and logo. We recognize that "[t]he test of unfair competition seems to be whether the device or means employed would be likely to confuse and mislead the public generally to purchase the product or patronize the shop of one person when the actual intention was to purchase the product or patronize

the shop of another." *Merlino v. Schmetz*, 66 R.I. 425, 428, 20 A.2d 266, 267 (1941). Additionally a party need not show "actual confusion, but whether confusion and deceptions are likely to occur * * *." *Bostitch, Inc. v. King Fastener Co.*, 87 R.I. 274, 288, 140 A.2d 274, 282 (1958).

■ The United Way urges upon us the view that there was no evidence that the public was ever confused about the separate and independent identity of the Fund and that the hearing justice had no choice but to conclude that the injunction should be denied. The United Way, we believe, misconceives the true nature of the confusion issue both found and anticipated by the hearing justice. The hearing justice, we believe, was not primarily concerned with whether there would be confusion over the Fund's being a distinct charity from that of the United Way but was concerned that the public might be misled to believe that the United Way was authorized to solicit for the Fund and that the Fund as an independent charity wished to be identified with the United Way. From this confusion the public might believe that the Fund preferred to have the United Way conduct its solicitation program and to have its views disseminated by the United Way. The potential result could be that certain work sites might only accept United Way solicitor-speakers and literature rather than solicitor-speakers and literature from the Fund, in the confused belief that the United Way was authorized to speak and collect on behalf of the Fund. The testimonial evidence presented by the Fund, while not entirely conclusive as to the extent of confusion, nonetheless adequately supports the trial justice's finding of a likelihood of confusion.

The trial justice had before him documentary evidence in the form of letters between the United Way's Ashby and former Brown University President Vartan Gregorian (Gregorian) that could certainly suggest to him that the United Way intended to create such confusion in the hope of preventing the Fund from pursuing its own work-site fund drives.[1] We thus conclude that the trial justice did not abuse his discretion in deciding that the Fund had demonstrated a likelihood of confusion.

The United Way also suggests that the hearing justice improperly considered G.L. 1956 § 5-53-10 in deciding whether there was a reasonable likelihood of success. That statute prohibits, among other things, solicitation of charitable contributions by use of an emblem or similar device that belongs to another charitable organization without first getting authorization to do so by that organization. G.L. 1956 § 5-53-10(d). Because we conclude that the Fund made out a prima facie case of common law unfair competition notwithstanding this statutory prohibition, we need not address whether it was appropriate for the hearing justice to consider that statute.

■ The United Way next asserts that the hearing justice abused his discretion in finding that the Fund was threatened with an

---

1. An August 19, 1993 letter from Ashby to Gregorian, following the decision by Gregorian to allow the Fund to conduct its own work site campaign at Brown University, is particularly telling in regard to the United Way's interest in preventing the Fund from pursuing its own campaign activities:

"I am disappointed, but not surprised by your decision in relationship to the University's annual charitable campaign. I do appreciate the political realities of your situation in this case. As your letter stated, I am aware of the special historical relationship between Brown and the Fund for Community Progress. And, were the FCP and the United Way the same organization as they were in 1984, I would completely understand your decision.

"Let me take a moment and explain our dilemma in relation to this decision. *The strategic directions our organization has chosen to* *follow are designed specifically to avoid the type of side by side campaign competition your decision sets up.* To adequately conduct a campaign designed on a side by side basis will require us to take on a different role than neutral campaign administrator. We must gear up for a competitive environment; otherwise the federations and agencies listed under the United Way would be at a distinct disadvantage. *It may be best for us to withdraw as the campaign administrator other than for our Community Care Fund and Critical Issue Funds and allow each individual federation, including the five United Way subsidiary federations to run independent campaigns at Brown.* That scenario would create equality. However I recognize this would create problems for Brown, which I am, frankly, not inclined to load on you." (Emphasis added.)

irreparable injury for which there was no adequate legal remedy. We disagree. The hearing justice determined that the good will, reputation, and unique identity of the Fund were threatened and that the ability of the Fund to conduct its charitable campaigning in its own manner was under attack. That finding is supported by the hearing evidence. Again we find the letter from Ashby to Gregorian suggestive of the harm threatening the Fund. This is precisely the type of irreparable injury for which an injunction is appropriate since a legal remedy such as monetary damages would be inadequate to compensate the victim for its loss. *See, e.g., In re State Employees' Unions,* 587 A.2d at 926 (Appendix A) (irreparable injury occurs where a later determination would be an "empty victory"). As the United Way aptly points out, the Fund was not able to present any statistical information to show its damages. This difficulty, however, only buttresses our belief that the harm alleged by the Fund is not quantifiable and thus in need of injunctive relief. *See Rhode Island Turnpike & Bridge Authority,* 433 A.2d at 182.

▮ In addition to contending that the injury was not irreparable, the United Way asserts that the injury was not immediate. It points to the fact that the United Way and the Fund have been disputing the use of the Fund's name and logo for well over a year. We conclude that the trial justice acted within the bounds of his discretion in deciding that the threat of injury was sufficiently immediate. We continue to believe that the immediacy of the injury is an important component for the trial justice to consider but recognize that it must be considered in the context of the litigation and the other criteria involved when deciding whether to grant a preliminary injunction. Here the trial justice could properly take notice of the fact that the litigants are two charitable organizations and that their inclination would be to settle disputes amicably, discreetly, and outside the legal system rather than with the haste expected of a commercial type corporation.

▮ Next the United Way contends that the trial justice abused his discretion in balancing the equities of this case. Again we disagree. As stated, the injury alleged here is precisely the type of harm for which an injunction is suited. Furthermore, the harm that would be visited upon the Fund if the injunction were denied would amount to a further loss of its unique identity and character and perhaps its opportunities to conduct work site fund drives. Alternatively the United Way has not suggested that it would suffer any harm in losing the ability to use the name and logo of the Fund. We also believe that the public interest in protecting the type of private property at issue here weighs in favor of granting the injunction.

▮ Assuming the issuance of the preliminary injunction did not constitute an abuse of the trial justice's discretion, the United Way notwithstanding asserts that it amounts to a prior restraint of free speech in violation of the First Amendment. We are entirely unpersuaded. The simple answer to the United Way's contention is that there is no speech interest involved in the use of another's private property for purposes of solicitation. Although not registered with the state or the federal government,[2] the name of the Fund and its logo are clearly property belonging to that charitable organization. As such there was clearly no speech interest to be protected, and the trial justice did not, therefore, need to concern himself with the question of prior restraints. This case is thus distinguishable from *State v. Berberian,* 427 A.2d 1298 (R.I.1981), where it was unclear whether the speech there concerned was deserving of First Amendment protection.

In contending that the trial justice has somehow run afoul of the First Amendment, the United Way refers this Court to *Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), and *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63

---

**2.** Counsel for the Fund acknowledged during oral argument that the Fund has registered its

name and logo since commencing this litigation.

L.Ed.2d 73 (1980). The United Way's reliance on these cases is simply misplaced. We recognize the Supreme Court's statement that "[s]olicitations 'involve a variety of speech interests * * * that are within the protection of the First Amendment,' * * *." *Riley,* 487 U.S. at 788, 108 S.Ct. at 2673, 101 L.Ed.2d at 683. However, this says no more than that solicitation materials should not be treated like commercial speech for purposes of First Amendment analysis, which has generally received less protection from the United States Supreme Court. *See 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. ——, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *see also* Michael W. Field, Note, *On Tap, 44 Liquormart, Inc. v. Rhode Island: Last Call for the Commercial Speech Doctrine,* 2 Roger Wms. U.L.Rev. 57, 89 (1996) ("[t]he First Amendment, however, does not maintain a constant amount of protection which must be shared by all forms of speech"). It does not mean, as the United Way suggests, that solicitation materials may never be regulated. Just as surely as the court might prohibit the United Way from using obscene speech in its solicitation materials, it may prohibit the use of another's property. *See State v. Tavone,* 482 A.2d 693 (R.I.1984).

For the foregoing reasons the United Way's appeal is denied and dismissed. The order entering a preliminary injunction is affirmed, and the papers are remanded to the Superior Court.

GOLDBERG, J., did not participate.