DECISION
Before this Court is a motion for a preliminary injunction by plaintiff, Aza Realty Trust, Inc., against defendant, Jonathan Lewis. Aza requests a preliminary injunction preventing Lewis from trespassing on property owned by Aza and from removing vegetation from the property. For the reasons set forth in this decision, Aza's motion for a preliminary injunction is granted.
 I Relevant Factual Background and Procedural History
Plaintiff Aza Realty Trust, Inc. is the owner of a residential lot located at 10 Seaview Avenue in Cranston, Rhode Island. Aza's principal, Brian Bowes, resides on the property, which is bounded by Narragansett Bay on its eastern edge. To the north of Aza's property is a lot owned by Jean Markarian. This property, located at 14 Bayamo Lane in Cranston, Rhode Island, also borders Narragansett Bay. A third property, owned by defendant Jonathan Lewis, is located at 9 Bayamo Lane in Cranston, Rhode Island. Lewis's property is located on the western edge of Aza's property and does not border Narragansett Bay.
Bowes has resided at the property owned by Aza since approximately May 2003. See Transcript dated July 30, 2007 at 6 ("Tr. I"). Lewis purchased his property in August *Page 2 
2006. Pl.'s Ex. 7. According to Lewis, he and his wife bought their property believing that it came with an easement entitling them to make use of a strip of land on Markarian's property leading to Narragansett Bay. Def.'s Ex. A. The strip of land to which Lewis refers is a dirt path bordered by shrubbery. Def.'s Ex. I. The path terminates near a flight of stone steps which lead down to the shoreline. Sea walls on either side of the steps make it necessary to use the steps for safe access to Narragansett Bay. Def.'s Ex. L.
Aza filed its complaint on July 19, 2007. The complaint alleges that on or about July 16, 2007, Lewis cut down and removed shrubbery from Aza's property and also removed a portion of lawn "to make a pronounced walkway across plaintiff's land." Compl. at ¶ 6. It further alleges that Lewis "continues to trespass" over Aza's property and to "utilize a set of steps on [Aza's] property without permission." Id. at ¶ 8. The complaint seeks equitable relief to prevent Lewis from trespassing and removing additional vegetation. It also seeks attorney's fees as well as damages, presumably for removal of the vegetation. On July 19, 2007, shortly after plaintiff filed its complaint, this Court granted Aza a temporary restraining order which "restrained and enjoined [Lewis] from trespassing over land of plaintiff . . . and removing any further vegetation of plaintiff until further Order of this Court." Markarian has not been joined as a party to this action.
This Court held preliminary injunction hearings on July 30, 2007, August 2, 2007, and October 10, 2007. During the first hearing, Lewis, acting pro se, admitted that he had arranged for the removal of certain vegetation. See Tr. I at 19. He contended, however, that the vegetation was on Markarian's property entirely and that he had removed the vegetation to facilitate use of the strip, over which he claimed to have an easement *Page 3 
consisting of a right-of-way. See id. at 27-28. Lewis also admitted that he had been using the claimed right-of-way until he had been served with Aza's complaint. See id. at 27. Evidence introduced by Aza included a survey plan prepared by Richard T. Bzdyra of Ocean State Planners, Inc. The survey shows that the area where Lewis cleared vegetation is on Aza's property and is not on the part of Markarian's property where Lewis contends he has a right-of-way. Pl.'s Ex. 1. Following the first hearing, the Court extended the temporary restraining order.
At the hearing on August 2, 2007, Lewis requested a continuance to seek counsel. This Court granted the continuance upon agreement by Lewis that the Court could continue the temporary restraining order in full force and effect pending a further hearing. At the third hearing on October 10, 2007, the parties continued to disagree on the extent of any damages to Aza resulting from Lewis's removal of vegetation, though they reached agreement on the location of the boundary line separating the Markarian and Aza properties. See Transcript dated October 10, 2007 at 24-25 ("Tr. II"). Lewis, now represented by counsel, introduced a survey prepared by Peter V. Cipolla. Def.'s Ex. N. The Cipolla survey illustrates that the stone steps are owned mainly by Aza, but that Markarian owns a small portion of the steps. Id. According to the survey, the angle of the property line is such that Markarian owns a width of about 7.5 inches at the top of the steps and about one foot at the bottom. Id. Both surveyors testified at the hearing on October 10, 2007, and they were in agreement as to the location of the boundary line on the steps. See Tr. II at 39, 49.
Nevertheless, the parties disagree on the ease of walking down the steps to Narragansett Bay without setting foot on Aza's property. Aside from the fact that *Page 4 
Markarian owns only a small portion of the steps, accessing the steps is potentially
difficult due to a retaining wall, railing, and hedge on Markarian's property alongside the steps. See Tr. II at 39-41, 51; Def.'s Exs. J, L, M. Based on the preliminary evidence, it would appear, at minimum, that it is inconvenient to access either the top of the steps or a point further down the steps from Markarian's property without traversing over Aza's property. Markarian himself is able to access Narragansett Bay via another set of stairs on the northern side of his property.See Tr. II at 52.
The temporary restraining order remains in effect. This Court now proceeds to decision on plaintiff's request for a preliminary injunction.[1]
 II Standard of Review
The Rhode Island Supreme Court frequently has observed that the purpose of a preliminary injunction "is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy. . . ." Coolbeth v. Berberian, 112 R.I. 558,564, 313 A.2d 656, 659 (1974)). Instead, it is "merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered." Id. Accordingly, in deciding whether to issue a preliminary injunction,
 the hearing justice should determine whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo. *Page 5 
Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999) (citingFund for Community Progress v. United Way, 695 A.2d 517, 521 (R.I. 1997)).
A party moving for a preliminary injunction is not required "to establish `a certainty of success.'" DiDonato v. Kennedy, 822 A.2d 179,181 (R.I. 2003) (quoting Fund for Community Progress, 695 A.2d at 521). Rather, the moving party need only make out a prima facie case.Id. The decision to grant a preliminary injunction ultimately is entrusted to the "sound discretion of the hearing justice." Pucino v.Uttley, 785 A.2d 183, 186 (R.I. 2001) (citing Iggy's Doughboys,Inc., 729 A.2d at 705). The reviewing court "will not disturb the exercise of a hearing justice's discretion on an application for a preliminary injunction unless it is reasonably clear that the hearing justice illegally exercised his or her discretion, or has abused his or her discretion." Fund for Community Progress, 695 A.2d at 521 (citingCoolbeth, 112 R.I. at 564-65, 313 A.2d at 660).
 III Analysis
Aza seeks a preliminary injunction preventing Lewis from trespassing on and removing vegetation from Aza's property. Aza's complaint specifies no legal theory other than trespass to support its claim for injunctive relief, and so this Court will treat its cause of action as a trespass claim.[2]
A trespasser is defined as "`one who intentionally and without consent or privilege enters another's property.'" Ferreira v. Strack,652 A.2d 965, 969 (R.I. 1995) (quoting Black's Law Dictionary 1504 (6th ed. 1990)). A trespasser, however, "is liable *Page 6 
for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong. Thus, he is a trespasser although he believes the land is his own, or that he has the consent of the owner, or the legal privilege of entry. . . ." Prosser and Keeton, The Law of Torts, § 13 at 74-75 (5th ed. 1984).
This Court is satisfied that Aza has established a reasonable likelihood that Lewis, on multiple occasions, trespassed on its property. The Court accepts, given little evidence to the contrary, that the actual boundary between the Markarian and Aza properties is the one specified on the surveys and testified to by the experts for both parties.[3] Given the difficulty of using the steps without setting foot on Aza's property as well as Lewis's own contention that he has a right to use the steps, it is highly likely that he trespassed in the course of using the steps. "A trespass by way of an entry by the actor in person may be a mere momentary invasion, as where one walks across another's field. . . ." See Restatement (Second) of Torts, § 158, cmt. h. at 278 (1989). This Court also finds it likely, based on the survey prepared by Bzdyra, that Lewis caused vegetation to be removed from Aza's property. It should be observed that Lewis would be responsible for trespass even if he entered Aza's property under the mistaken belief that he was not trespassing.
Lewis argues that he has an easement over Markarian's property consisting of a right-of-way over a five-foot wide strip of land and that the easement grants him a right to access at least the portion of the steps owned by Markarian. Aza argues that the easement over Markarian's property never existed and that any such right-of-way, if it *Page 7 
existed, is now abandoned.[4] Nevertheless, the important question, insofar as evaluating Aza's trespass claim, is not whether Lewis has a right-of-way over Markarian's property, but whether he has demonstrated some right to access property owned by Aza. In this Court's view, he has not.
An easement by prescription might be one source of a right to pass over Aza's property. Lewis has stated his belief that the easement in question has been in use for many years, indicating the possibility of an easement by prescription over both Markarian's property and the part of Aza's property on which he allegedly trespassed. At least at this juncture, however, Lewis has not provided evidence of an easement by prescription over Aza's property. See, e.g., Nardone v. Ritacco,936 A.2d 200, 205 (R.I. 2007) (easement by prescription established when claimant demonstrates actual, open, notorious, hostile, and continuous use for at least ten years). *Page 8 
Additionally, Lewis contends that, as an equitable matter, this Court should find that he is entitled to full access to the stone steps because, as he claims, he has a right to access the part of the steps owned by Markarian. Yet, assuming Lewis has the right or privilege to use the Markarian portion of the steps, Lewis has not provided any law supporting the assertion that, for equitable reasons, Aza's property rights must yield to make it easier for Lewis to use the steps. Moreover, as noted below, this Court believes the equities, at this juncture, weigh in Aza's favor. Accordingly, this Court finds that Aza has demonstrated a reasonable likelihood that it will prevail on its trespass claim.
Moving to the second prong of the test for a preliminary injunction, Aza must establish "some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore [it] to its rightful position." Fund for Community Progress,695 A.2d at 521 (citations omitted). The Rhode Island Supreme Court has found that an injunction is appropriate relief to prevent the irreparable harm that results from "continuing and repeated trespasses." See BurrillvilleRacing Ass'n v. Garabedian, 113 R.I. 134, 137, 318 A.2d 469, 471 (1974) (citing Newport Yacht Club, Inc. v. Deomatares, 93 R.I. 60, 64,171 A.2d 78, 80 (1961)); Raposa v. Guay, 84 R.I. 436, 444, 125 A.2d 113, 117
(1956)); see also Rhode Island Turnpike Bridge Auth. v. Cohen,433 A.2d 179, 182 (R.I. 1981) ("One of the most common illustrations [of irreparable harm] is that of a continuing trespass interfering with an interest in property.") (citing Newport Yacht Club, Inc., 93 R.I. at 64,171 A.2d at 80 and Raposa, 84 R.I. at 444, 125 A.2d at 117).[5] *Page 9 
Thus, a court may issue an injunction where a person repeatedly enters property without consent from the owner. See Garabedian,113 R.I. at 137-138, 318 A.2d at 471 (injunction was appropriate relief at common law for race track owner to exclude person who repeatedly entered premises without consent). The rationale is that an injunction prevents the need for multiple lawsuits alleging trespass. See, e.g.,Lambert v. Holmberg, 712 N.W.2d 268, 275 (Neb. 2006) ("Where an injury committed by one against another is continuous or is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction.").[6]
In the present dispute, a preliminary injunction is the only adequate remedy for preventing the harm that Aza would suffer should Lewis commit future trespasses on Aza's property. Although this Court finds it unlikely, given the pendency of the temporary restraining order, that Lewis would attempt to remove vegetation from property belonging to Aza, it is a more likely possibility that, in the absence of a preliminary injunction, Lewis would begin using the portion of the stone steps belonging to Aza. A preliminary injunction enjoining use of the portion of the steps belonging to Aza will ensure that Aza's property rights are respected and prevent the need for additional trespass claims. *Page 10 
Furthermore, the balance of the equities under the third prong of the test lies in Aza's favor. The equities are determined by "examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." Fund forCommunity Progress, 695 A.2d at 521 (citing In re State Employees'Unions, 587 A.2d 919, 925 (R.I. 1991)). Here, the hardship to Aza by the threat of repeated trespasses is greater than the hardship to Lewis. Although, with the summer months on hand, this Court can appreciate Lewis's desire to access Narragansett Bay, Lewis simply has not established a legal right to access property which, according to the expert surveyors for both parties, belongs to Aza. The balance of the equities thus clearly lies in Aza's favor.
Finally, since a temporary restraining order went into effect, Lewis has been restrained from trespassing on Aza's property; failing to issue a preliminary injunction would alter the status quo by which Aza's property rights are protected by this Court's temporary restraining order. Even if the status quo is regarded as one in which Lewis has been using the entirety of the stone steps, upsetting that status quo is not grounds for denying a preliminary injunction. Indeed, the principal reason for preserving the status quo is "to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered." Coolbeth, 112 R.I. at 564, 313 A.2d at 659; seealso In re Joseph J., 465 A.2d 150, 151 (R.I. 1983) ("court must make a finding . . . that the status quo must be preserved to prevent irreparable injury"); Canal Authority of Florida v. Callaway,489 F.2d 567, 576 (5th Cir. 1974) ("focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo");Lums Restaurant Corp. v. Bloomington Restaurant Invest., Inc., 416 N.E.2d 751, 753 (Ill.App.Ct. 4th Dist. 1981) *Page 11 
(injunctive order may upset status quo to enjoin a repeated trespass). In this case, the Court finds it necessary to issue a preliminary injunction to prevent irreparable injury to Aza's property rights.
 IV Conclusion
Based on the foregoing, this Court grants Aza a preliminary injunction prohibiting Lewis from trespassing on and removing vegetation from Aza's property. This Decision does not address the question of whether Lewis has the right to access Markarian's property, including the portion of the stone steps owned by Markarian. Nevertheless, if Lewis uses the steps, he must do so without trespassing on Aza's property, absent Aza's consent. Although Lewis claims it is possible to access and use only the Markarian portion of the steps, this Court urges Lewis and Markarian to act with due regard for safety.
Counsel shall confer and submit forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision.
[1] Although another trial justice presided at the preliminary injunction hearings, the parties have agreed to permit this Court to render a decision on Aza's request for a preliminary injunction based on the transcripts of the prior hearings, the evidence of record from those hearings, and the parties' memoranda.
[2] For instance, Aza has not sought a declaratory judgment as to whether Lewis is the holder of an easement entitling him to access Narragansett Bay via the stone steps. See, e.g., Mattos v. Seaton,839 A.2d 553, 555-56, 558 (R.I. 2004) (summary judgment upheld in action for declaratory judgment and injunctive relief to prevent defendant from using claimed right-of-way across plaintiff's property).
[3] This Court does not rule out the possibility that a different boundary line might be established upon the presentation of further evidence. See, e.g., Ungaro v. Mete, 68 R.I. 419, 426, 27 A.2d 826, 829
(1942) (fence between properties created new boundary line);Acampora v. Pearson, 899 A.2d 459, 464 (R.I. 2006) (doctrines of acquiescence and adverse possession can be used to establish boundaries between lots).
[4] As to Lewis's claim to an easement, the evidence in the record is conflicting. A plat map recorded on July 17, 1926 shows that most of the lots in the area, with the exception of Aza's property, were at that time owned by C.I. Bigney Construction Co., Inc. ("C.I. Bigney"). Pl.'s Ex. 2. The map also depicts a private right-of-way on a five-foot strip of land on Markarian's lot, alongside the edge of what is presently Aza's property. However, another plat map recorded only 10 days later, on July 27, 1926, does not indicate a right-of-way. See Pl.'s Ex. 3.
Assuming an easement did exist, it may have been extinguished. In a deed dated May 14, 1932, Mildred S. Kent, owner of the lot now owned by Lewis, apparently deeded the easement back to C.I. Bigney. Pl.'s Ex. 8. Lewis's own deed does not mention an easement over Markarian's property. Pl.'s Ex. 7. As evidence of the easement, Lewis states that Markarian's deed refers to an easement. At the first preliminary injunction hearing, however, Markarian's deed was marked for identification only as Exhibit H and thus cannot be considered by this Court at this time.
Perhaps recognizing that the land evidence records do not clearly indicate an easement, Lewis obtained a document signed by Jean Markarian on October 9, 2007, entitled "Grant of Easement." Def.'s Ex. O. The document states that it grants Lewis a right-of-way on the same five-foot strip of land indicated on the plat map recorded on July 17, 1926. Id. The document also states that the right-of-way "may be revoked at any time." Id.
This Court does not determine whether Lewis has an easement over Markarian's property. At the very least, the evidence would suggest that Lewis may have a license to access an area five feet in width on the southern edge of Markarian's property. The "Grant of Easement" signed by Markarian on October 9, 2007, because it is revocable, may be more properly characterized as a license rather than an easement.See Cain v. Johnson, 755 A.2d 156, 172 (R.I. 2000) (licensee is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent" (internal quotations omitted)); 7 Thompson onReal Property § 60.03(a)(7)(iv) at 492 (Thomas ed. 2006) ("A license is revocable; an easement is not.").
[5] Most courts distinguish between a continuing and a repeated trespass. "An unprivileged remaining on land in another's possession is a continuing trespass for the entire time during which the actor wrongfully remains. Such a continuing trespass is to be distinguished from a series of separate trespasses on land [i.e., a repeated trespass], as where A habitually crosses B's field without a privilege to do so." Restatement (Second) of Torts, § 158, cmt. m (1989);see also Mesolella v. Providence, 508 A.2d 661, 668 n. 8 (R.I. 1986) (continuing trespass is an "`an unprivileged remaining on land in another's possession'" (quoting the Restatement (Second) of Torts)). However, in Garabedian, the Rhode Island Supreme Court suggested that a defendant who had been ejected from a racetrack and who repeatedly returned had committed a "continuing trespass." SeeGarabedian, 113 R.I. at 137.
[6] See also Planned Parenthood of Mid-Iowa v. Maki, 478 N.W.2d 637,639-640 (Iowa 1991) ("Generally, an injunction will lie to restrain repeated trespasses so as to prevent irreparable injury and a multiplicity of suits."); Morris v. Mullis, 590 S.E.2d 823, 832
(Ga.Ct.App. 2003) ("This Court has recognized that resort to equity is appropriate to prevent multiple suits on the same issue. . . .");Kugler v. Ryan, 682 S.W.2d 47, 50 (Mo.Ct.App. 1984) ("When a trespass is repeated and would require a multiplicity of suits to redress . . . damages are not an adequate remedy.").