DECISION
Before the Court is the defendant's motion for a preliminary injunction and the plaintiff's objection thereto. The plaintiff filed the instant action seeking a permanent injunction enjoining the defendant from engaging in excavation activities on the subject property. The defendant now moves for a preliminary injunction to restrain the Town from enforcing cease and desist orders.
 Facts/Travel
On June 15, 1966, A. Cardi Realty Associates purchased property located on Hopkins Hill Road in West Greenwich, Rhode Island and identified as Assessor's Plat 56, Lot 3. Associates purchased the property to replace an excavation site in Cranston which was condemned by the State of Rhode Island. Cardi Corp., a road building and construction company owned by the same two principals of Associates, was the sole and exclusive purchaser of the aggregate extracted from the property. In 1969, the Town enacted and adopted a zoning ordinance which zoned the property Rural Farming Residential and Industrial A. Article I, Section 6 (C)(3) of the ordinance permits earth removal operations in Rural Farming Residential and Industrial A and B Districts by special exception. Other extractive industries, such as quarries, are permitted by special exception in Industrial B Districts only.
In 1987, Associates purchased Lot 6 to extend the operations on Lot 3. In the spring of 1988, Cardi extracted 255,000 tons of earth material from Lot 3. In the following two years, Cardi extracted 25,000 tons each year. S. Cardi Aff'd at para. 6. In 1990, Harold Baton, the town Zoning Officer issued cease and desist orders, seeking to restrain further extraction which the Town believed violated the Zoning Ordinances. Cardi's continued activity prompted the Town to bring the instant action seeking a temporary restraining order and / or preliminary injunction enjoining the excavation. Cardi in turn filed a counterclaim for a preliminary injunction to restrain the Town from enforcing its cease and desist orders.
Scheduled to be heard on October 12, 1990, the hearing on Cardi's motion was passed by agreement of the parties. The parties further agreed that the matter would remain pending while Cardi's applied for a special exception to operate an earth removal operation on Lot 6 pursuant to Article I, Section 6 (C)(2) of the Zoning Ordinance. After numerous hearings, the Planning Board recommended denial of the application, and the Zoning Board did so deny the application. The Board found that Cardi's proposed operation constituted a quarry and that the Zoning Ordinance did not permit quarries as a special exception in Rural Farm Residential or Industrial A zones. The Zoning Board further found that even were said operation conditionally permitted, Cardi had failed to demonstrate that the use met the requisite special exception standards of the ordinance.
On September 25, 1997, Cardi renewed its counterclaim and refiled a Motion for a preliminary injunction. On January 26, 1998, the Court held a hearing on the issue.
At the hearing, Cardi Realty presented the following evidence which it maintains demonstrates the massive excavation of Lot 3 beginning in 1966. Hearing, S. Cardi at 10. The earth removal operation involved extracting "extensive quantities" of earth materials and transporting the materials off-site. A. Cardi Aff'd at para. 3. The digging occurred on the left-hand side of the property. Hearing, S. Cardi at 11. The excavation was a commercial operation, involving an hydraulic excavator, one or two bulldozers for stripping and stockpiling, as well as two to seven loading trucks. Hearing, S. Cardi at 12. Former tax-assessor for the town, Henry Wright. attested to the "excavation," calling it a "gravel business" and remarking that "they were clearing, taking the rocks out." Deposition, H. Wright. Unable to give a numerical estimate, Steve Cardi suggested that "a number" of trucks left the property with gravel in the spring and fall of 1966. Hearing, S. Cardi at 44. Upon viewing photographs in a booklet produced by A. Cardi Realty, Cardi pointed out "a whole lot of excavation" where the pond is now. Hearing, S. Cardi at 51.
After 1968, however, the property was not the prime source of gravel for A. Cardi Realty. Hearing, S. Cardi at 15. Nevertheless, Steve Cardi continued to load trucks with earth material "from time to time" and transport the material off-site for commercial use. Hearing, S. Cardi at 16. Cardi explained that he would "run the loader, load the trucks and take some stuff out" two to three times per year. Hearing, S. Cardi at 40.
Steve Cardi was not the only individual to continue to excavate the property after 1968: Bob Leahy, the caretaker, did as well. Hearing, S. Cardi at 63. Leahy used his own loader to dig dirt on the property every other weekend as a "side business." Hearing, S. Cardi at 63. The nature and extent of his excavations depended upon the type of job involved. Hearing, R. Leahy at 16. Although many of his "jobs" were "freebies," Leahy sometimes sold the earth material for profit. Hearing, R. Leahy at 13.
John Gagliardi, union steward and truck driver for Cardi Corp., further supported Cardi Realty's allegations of excavation. Hearing, Gagliardi at 5. He recalled sending three to four trucks a day, three to four days per week in the summer months to the West Greenwich property. Hearing, Gagliardi at 6. In Gagliardi's recollection, the excavation resumed almost every summer between 1970 and 1988. Hearing, Gagliardi at 8.
John Caito, an Environmental Engineer, examined aerial photographs of the plot taken during the relevant years. In his opinion, "some earth work had to have taken place" to clear the forest and stump the land. Hearing, Caito at 30. He deduced that the area was excavated to create a pond. Hearing, Caito at 30. He further noted a "teardrop-shaped" area which could have been one of the areas excavated by Cardi or Leahy. Hearing, Caito at 34. Based upon the testimony of Steve Cardi, Bob Leahy and John Gagliardi, as well as the aerial photos, Caito concluded that "earth removing activities took place there." Hearing, Caito at 38.
Finally, the defendant points to evidence of the motivation for buying the West Greenwich property. The defendant purchased Lot 3 to replace Cranston property which was condemned by the State of Rhode Island. In order to receive favorable tax consequences, Cardi Realty was required to purchase "like-kind" property, in this case, property used for an excavation operation. Patricia Thompson, C.P.A., confirmed that "a prudent tax advisor rendering advice on the type of replacement property to be acquired in this case would have — considered, . . ., the `like-kind' requirements." Thompson, Aff'd at para. 6.
Doctor Arthur Socolow, certified geologist, testified for the Town. After viewing aerial photographs taken in 1965 and 1970, Socolow concluded that the only excavation which occurred on the property involved the creation of a pond. Hearing, Socolow at 61. Socolow admitted, however, that aerial photographs would not show an insignificant amount of material being excavated. Hearing, Socolow at 11. Manuel Guisti, supervisor at the Statewide Planning Program, also examined the photos. He agreed with Socolow that earth was removed to create a pond on Lot 3. In his opinion, excepting the pond, nothing of significance, or no more than fifty truckloads, was removed from the lot between 1965 and 1970. Hearing, Guisti at 108. Finally, the Town attacks the credibility of Cardi, Gagliardi and Leahy, noting the defendant's failure to produce any records of the alleged excavations.
 Preexisting Nonconforming Use
Cardi Realty first argues that excavation is a lawful nonconforming use of Lot 3. The defendant maintains that it presented evidence that the use existed at the time of the ordinance and that the use was sufficient to warrant protection under the statute. Alternatively, the plaintiff attacks the nature of the "pre-ordinance" digging, arguing that the land was never devoted to excavation. Thus, the Town concludes that excavation is not a protected nonconforming use.
The Rhode Island Zoning Enabling Act specifically protects nonconforming uses, providing that "no ordinance enacted under the authority of this chapter shall prevent or be construed to prevent the continuance of the use of any building or improvement for any purpose to which the building or improvement is lawfully devoted at the time of the enactment of the ordinance." G.L. (1956) § 45-24-10 (repealed). The West Greenwich Ordinance tracks the statute, allowing the continuance of a lawful nonconforming use with exceptions. West Greenwich Zoning Ordinance, article VIII, § 1. A nonconforming use has three elements: 1) the use must exist at the time of the ordinance, 2) the use must be lawful, and 3) the use must be sufficiently substantial to warrant protection under the statute. See
Rathkopf, The Law of Planning and Zoning, § 51-9.
The existence and sufficiency of Cardi's pre-ordinance use are at issue in the instant case. "A use which is planned rather than actually commenced prior to the enactment of a restrictive ordinance generally does not qualify as an existing use which is entitled to continue." 83 Am. Jur.2d, Zoning and Planning, § 641 (1992). Moreover, "every existing lawful use of land does not qualify as a sufficient `use' to establish a nonconforming use."Id. at § 637 (1992).
Cardi Realty presented evidence that it began excavating the property prior to the 1967 enactment of the ordinance. Bulldozers cleared the land, and an hydraulic excavator extracted earth material to create the present-day pond. After the pond was completed, Steve Cardi and Bob Leahy continued to remove truckloads of earth from the site each year. Since these activities demonstrate more than mere plans to excavate the property, they evince an existing nonconforming use which is permitted to continue. See Township of Bloomfield v. Beardslee,84 N.W.2d 537, 542 (Mich. 1957) (mere preliminary work and an intention to quarry do not amount to "actual use" of a "substantial character" to warrant a nonconforming use); LowerMount Bethel Township v. Stabler Development Company,509 A.2d 1332 (PA 1986) (substantial evidence did not support trial court's finding of a nonconforming use; the owner never performed an act of quarrying or preparatory work). Furthermore, the testimony before the Court established sufficient use to qualify it as nonconforming. See South County Sand Gravel Co. v. Townof Charlestown, 446 A.2d 1045, 1046 (R.I. 1982) (evidence that individuals had mined the property, even in insubstantial quantities, before enactment of the zoning ordinance was sufficient to support the finding of a nonconforming use);Caswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 648 (R.I. 1981) (respondent presented testimony, through one of its agents, that a gravel operation existed prior to the zoning ordinance and petitioner admitted to sporadic use; this was sufficient support to find a valid nonconforming use). Accordingly, this Court finds that Cardi conducted excavation, and said excavation constituted a nonconforming use subject to the limitations set forth in the following section.
 Expansion of the Nonconforming Use
Cardi Realty contends that it did not unlawfully expand the excavation. Even admitting that generally a landowner may be prohibited from expanding a nonconforming use, the defendant argues that courts allow expansion where, as here, the use involves the extraction of natural resources such as sand, gravel, or stone. Alternatively, the Town proposes that the "mass excavation," words used by Steven Cardi to describe the activity, in 1990 was a substantial increase in excavation activity which in turn magnified the deleterious effect on the surrounding community. Thus, the Town concludes that the nature of the 1990 excavation is so dramatically different from that of the alleged preexisting nonconforming use that it constitutes a change of use.
"It has long been the rule that the right to continue a nonconforming use does not include a right to extend or enlarge it." 83 Am.Jur.2d, Zoning and Planning § 660 (1992). The West Greenwich Zoning Ordinance provides "that no lawful nonconforming use shall be enlarged, extended, expanded or increased, without exception by the Zoning Board of Review." West Greenwich Zoning Ordinance, article VIII, § 1. Nevertheless, extension of a use is sometimes permitted where the expansion is the result of natural business growth or where the nonconforming use involves earth removal operations. 83 Am.Jur.2d, Zoning and Planning, §§ 661, 671.
With respect to earth removal operations, courts have reasoned that "it is the very nature of [the business] that reserve areas be maintained which are left vacant or devoted to incidental uses when they are needed." Du Page County v.Elmhurst-Chicago Stone Co., 165 N.E.2d 310, 313 (Ill. 1960). Thus, the "Doctrine of Diminishing Assets" protects the unique interest created in land reserved for excavation and allows a landowner to expand the perimeters of his nonconforming use.
While it is true that the Doctrine permits expansion of thephysical confines of the use, it does not necessarily protect the right to amplify the intensity of the use. An increase in volume of business is not permissible where the basic nature and character of the use is changed from that which existed at the time the use became nonconforming. Rathkopf, The Law of Zoningand Planning, § 51.07 (1975). For example, in Santoro v.Zoning Board of Review, the owner of a nonconforming grocery store and gasoline outlet applied for a permit to build a replacement facility and add one or two gas pumps. 171 A.2d 75, 91 R.I. 68
(1961). The building inspector denied her application, and the Zoning Board upheld the decision. On review, the Supreme Court found that the Board's decision was supported by evidence in the record. The Court reasoned that the proposed facility would result in additional business and increased traffic and noise which "together would constitute a change of the nonconforming use" not authorized by the ordinance. Id.
Clearly, Cardi's use of the property in 1988 through 1990 was dramatically different from that of 1969. Steve Cardi admitted that the "mass excavation" to create the pond in 1967 slowed to occasional truckloads for commercial use by the time of the passage of the ordinance. Consequently, prior to the ordinance and for many years thereafter, earth removal on Lot 3 was limited to small amounts used for commercial and other purposes. The only "mass excavation" of the property prior to the adoption of the zoning ordinance involved the creation of a pond for the grazing animals and inhabitants.
The extensive commercial earth removal began in 1988 with 255,000 tons, and continued through 1989 and 1990 with approximately 25,000 tons each year. These facts evidence more than a mere increase of excavation activity; they indicate a change in the basic nature and character of the nonconforming use. Accordingly, this Court finds that the significant increase in volume of business constitutes a change of the nonconforming use not authorized in the West Greenwich Zoning Ordinance.[1]Id. See also Kreger v. Public Bldgs. Comr., 234 N.E.2d 283, 287 (MA 1968) (a nonconforming retail oil supplier which expanded into wholesale distribution and increased volume from 200,000 gallons to 1.4 million gallons per day unlawfully expanded its nonconforming use); Village of Orchard Lake v. Connor,335 N.W.2d 82, 84 (Mich. App. 1983) (unlawful expansion where a marina docked more than twice the number of boats as it docked when the use became nonconforming).
 The Preliminary Injunction
Cardi Realty moves for a preliminary injunction pursuant to Rule 65 of the Superior Court Rules of Civil Procedure. The defendant maintains that there is a substantial likelihood of success on the merits, that irreparable harm will come to it, and that a balancing of the parties' interests favor Cardi Realty. The Town asserts that there is not a substantial likelihood of success on the merits because the defendant did not have the right to operate a commercial gravel bank or quarry on the property. Furthermore, the Town claims Cardi Realty will not suffer irreparable harm as there is an abundant supply of earth materials in the area and at its Coventry location. Finally, the plaintiff claims that balancing the equities and the public interest weigh heavily in favor of the Town.
Rule 65 confers upon the court the power to issue a preliminary injunction when a party shows that "immediate and irreparable injury, loss or damage will result to the applicant." R.C.P. 65 (a). To prevail on its motion for a preliminary injunction, Cardi "must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." Fund for Community Progress v. UnitedWay of Southeastern New England, 695 A.2d 517, 521 (R.I. 1997). Cardi must also show that it has a reasonable likelihood of succeeding on the merits of its claim at trial. Cardi need not show a certainty of success; rather Cardi must make out a prima facie case. If Cardi can show both of these factors exist, the trial justice will then "consider the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted, and the public interest in denying or granting the requested relief." Fund for Community Progress, 695 A.2d at 521.
The cease and desist orders in question order Cardi to immediately stop "all earth removal work" on Plat 56 — Lot 3 and Plat 55 — Lot 5-2, Hopkins Hill Road, West Greenwich, RI. As written, the cease and desist orders apply both to the preexisting nonconforming use of Lot 3 as well as the unauthorized expanded use of that property. Likewise, Cardi's motion for a preliminary injunction implies that it wishes to continue both forms of earth removal.
Since there's a legally significant difference between Cardi's right to continue its preexisting nonconforming use and its right to continue its expansion of that use, the Court will examine the motion for a preliminary injunction for each activity separately. In light of this Court's finding that Steve Cardi's and Bob Leahy's removal of a few truckloads of earth each year constitutes a preexisting nonconforming use, the Court finds that Cardi has shown that the cease and desist order, as applied to the preexisting nonconforming use, works an immediate and irreparable injury upon Cardi. The Court further finds that Cardi has made out a prima facie case that it has a reasonable likelihood of succeeding upon the merits of its objection to the cease and desist order, in the limited sense described above. Turning to the equities of the case, the hardship suffered by Cardi in not being able to continue its low-level earth removal activities outweighs the hardship suffered by the town in allowing Cardi to continue to remove a few truckloads per year, as Cardi has done for many years. Accordingly, Cardi's motion for a preliminary injunction, with respect to the continued removal of a few truckloads per year, is granted. See Fund for CommunityProgress, 695 A.2d at 521.
However, in accordance with the Court's finding that Cardi unlawfully expanded its nonconforming use, the Court finds that Cardi has not made out a prima facie case that it is entitled to continue the commercial gravel operation on Lot 3. Likewise, the Court also finds that Cardi is not likely to succeed in its objections to the cease and desist orders with respect to the expanded nonconforming use of Lot 3. See Leone v. Town of NewShoreham, 534 A.2d 871, 873 (R.I. 1987) (plaintiff established substantial likelihood of success on the merits with evidence that she was deprived of a property interest). As Cardi Realty has failed to establish a substantial likelihood that it will succeed on the merits of its objections to the cease and desist order as it applies to the commercial gravel operation on Lot 3, the Court need not address the remaining factors and denies the motion for preliminary injunction in that respect.
Counsel shall confer and present to the Court an order consistent with the foregoing.
[1] Although not in evidence as an exhibit, appended to the plaintiff's objection to the defendant's motion for a preliminary injunction is the decision of the Zoning Board of Review of the Town of West Greenwich which suggests that the expanded use will increase traffic on the roads surrounding Lot 3. In denying A. Cardi Realty's application for a special exception, the Zoning Board found that the proposed use would result in traffic and road conditions hazardous to the public safety since the "added truck traffic will make the road unsafe." Decision of the Town of West Greenwich Zoning Board of Review, June 25, 1997. Furthermore, Ernest Winsor, a neighbor living approximately one and one-quarter miles from the Hopkins Hill Road property, stated that he became aware of the gravel removal operation in the late spring of 1990 when he observed, on a daily basis, the activity on Lot 3 and the constant road traffic on Hopkins Hill Road which consisted of large trucks hauling gravel. E. Winsor Aff'd at para. 21.