[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter was tried to the Court without a jury. In accordance with Super. Ct. R. Civ. P. 65(a)(2), and with the consent of the parties, the hearing on the preliminary injunction was consolidated with the trial of the action on the merits. A temporary restraining order was issued by the Court on February 24, 2004, and has remained in full force and effect during the pendency of these proceedings. It was modified on October 15, 2004. Trial was conducted on March 5, 2004 March 19, 2004 September 10, 2004 and October 15, 2004.
Plaintiff Peter Colannino (hereafter "Colannino" or "Plaintiff") has filed a complaint[1] seeking injunctive relief. The Defendants have sought declaratory and injunctive relief by way of an Amended Counterclaim.[2] The critical issue that underlies all of the claims and counterclaims is the ownership and use of the tradename "3% Realty." Plaintiff alleges that a general partnership known as J P Realty Partnership (hereafter "the Partnership") has exclusive ownership rights, and therefore exclusive use in Rhode Island, of the tradename "3% Realty." The Plaintiff and Defendant Joseph P. Iaciofano (hereafter "Iaciofano, Sr.") are each 50% general partners in the Partnership. Defendants, on the other hand, allege that the tradename is owned exclusively by J.P. Iaciofano, Inc. (hereafter "the Corporation"), a corporation owned and controlled by the Defendants. Each side has sought injunctive relief to prevent the other from using the name "3% Realty".[3]
Since this case was heard without a jury, the following constitutes the Court's findings of fact and conclusions of law in accordance with Super. Ct. R. Civ. P. 52(a).
 FINDINGS OF FACT
1. Colanino has held a real estate brokers license in the State of Rhode Island since 1977.
2. Iaciofano, Sr. has held a real estate brokers license in the State of Rhode Island since 1961.
3. Beginning sometime in the early to mid-1980's, Plaintiff and Iaciofano, Sr. began to operate as a partnership in the real estate brokerage business in Rhode Island using the business name "3% Realty." These partners have operated continuously as a real estate brokerage business using the business name "3% Realty" from the early to mid-1980's until February 19, 2004, the date the facts giving rise to the instant dispute began. The partners carried on the business of 3% Realty in an association as co-owners for profit.
4. Both Plaintiff and Iaciofano, Sr. had prepared business cards beginning in the early to mid-1980's identifying themselves as "3% Realty", having an address of 1920 Mineral Spring Avenue, North Providence, Rhode Island, and a telephone number of (401) 353-3600. All advertisements, telephone listings, and listing agreements made under the name "3% Realty" were done in furtherance of the business of the Partnership. During the course of the business relationship between Plaintiff and Iaciofano, Sr., the door at the business premises located at 1920 Mineral Spring Avenue, North Providence, Rhode Island, was printed with the words "3% Realty" and centered immediately underneath, in smaller type, the names "J.P. Iaciofano" and "P. Colannino" were printed. Both telephone directories and other advertising directories listed "3% Realty" as a real estate brokerage business operating out of the premises located at 1920 Mineral Spring Avenue, North Providence, Rhode Island, and having a telephone number of (401) 353-3600.
5. On January 2, 1989, Plaintiff and Iaciofano, Sr. signed a partnership agreement for the partnership which then became known as J P Realty Partnership. The partnership agreement memorialized the agreement that Plaintiff and Iaciofano, Sr. were involved in certain business enterprises which were to be controlled by the Partnership. The purpose of the Partnership was stated as follows: "To own and control the businesses referred to in Exhibit "A". . . and invest in other forms of business ventures as the Partners may from time to time in their discretion determine."
6. Exhibit "A" to the Partnership Agreement referred to three businesses that the partnership was to operate: 1920 Corp., Inc.; certain lots which were contributed to the Partnership by the partners; and "3% Realty, Business and Trade Name (3% Realty)."
7. Both partners in the Partnership were in possession of identical executed copies of the Partnership Agreement that had the identical references filled in on Exhibit "A" thereto.
8. Iaciofano, Sr. executed an "Application for Trademark Registration" for "3% Realty" on August 13, 1985, but the application was never filed with the Rhode Island Secretary of State and no certificate of registration was issued pursuant to such application under G.L. 1956 § 6-2-4.
9. J.P. Iaciofano, Inc. filed a Fictitious Business Name Statement with the Rhode Island Secretary of State on April 10, 1986 designating "3% Realty" as the fictitious name of J.P. Iaciofano, Inc. J.P. Iaciofano, Inc. filed a "Statement of Abandonment of Use of Fictitious Business Name" with the Rhode Island Secretary of State on June 28, 2004 pursuant to G.L. 1956 § 7-1.1-7.1(c). On the same day, Articles of Incorporation were filed by Defendants Joseph F.C. Iaciofano (hereafter "Iaciofano, Jr."), and Gina M. Iaciofano for a business corporation under the name "Three Percent Realty Inc." Three Percent Realty Inc. has never conducted any business.
10. From 1987, when J P Realty Partnership filed its initial partnership tax return, through 2003, all of the income reported for tax purposes from real estate sales made using the name "3% Realty" was reported under the partnership tax returns filed by J P Realty Partnership. Neither J.P. Iaciofano, Inc., nor any other person or entity, filed tax returns recording any income from real estate sales made under the name "3% Realty."
11. Iaciofano, Sr. informed the Department of Business Regulation (hereafter "DBR") by letter dated October 5, 1994, that Plaintiff was to be listed as the broker of record for the real estate brokerage business known as "3% Realty." He retained such "broker of record" status until February 17, 2004, shortly before the commencement of this litigation.
12. In November, 2003, Iaciofano, Sr. transferred his interest in J.P. Iaciofano, Inc. to his son Iaciofano, Jr., and to his daughter Gina M. Iaciofano. It is through the transfer of the corporate stock of J.P. Iaciofano, Inc. to Iaciofano, Jr. and Gina Iaciofano that the Corporation, and through the corporation, its principals, make claim to ownership and control of the tradename "3% Realty." The only time that Iaciofano, Jr. sold real estate using the name "3% Realty" was in connection with his working for J P Realty Partnership in 2002 and 2003.
13. By reason of the alleged ownership of the tradename "3% Realty" by J.P. Iaciofano, Inc., on or about February 13, 2004, Plaintiff was advised by the Defendants J.P. Iaciofano, Inc., Iaciofano, Jr., and Gina M. Iaciofano to cease and desist operating a real estate business using the name "3% Realty," either personally or through the Partnership. Thereafter, on February 19, 2004, Plaintiff was excluded from the business premises of the Partnership. As a result, an application for a Temporary Restraining Order was made to this Court on February 20, 2004, and a restraining order issued on that date.
14. All parties in this case have acknowledged that "3% Realty" is a valuable tradename used in association with the Partnership's real estate brokerage business.
15. The phrase "3% Realty" requires a consumer to use perception and imagination to identify the name with the service provided thereunder, and the phrase is therefore inherently distinctive. See Analysis, Section B, infra.
 STANDARD OF REVIEW
The parties seek both injunctive and declaratory relief. A plaintiff need not show actual confusion to obtain injunctive relief in an unfair competition action. Nat'l Lumber Bldg.Materials Co. v. Langevin, 798 A.2d 429, 434 (R.I. 2002); Fundfor Community Progress v. United Way of Southeastern NewEngland, 695 A.2d 517, 521-22 (R.I. 1997); Bostitch, Inc. v.King Fastener Co., 87 R.I. 274, 288, 140 A.2d 274, 282 (1958). The Plaintiff must only prove that public confusion will likely occur from the similar use of a business or trade name. Nat'lLumber Bldg. Materials Co., 798 A.2d at 434; Bostitch, Inc.,87 R.I. at 288, 140 A.2d at 282. It is unnecessary for a plaintiff to prove monetary damages to be entitled to an injunction. Nat'l Lumber Bldg. Materials Co.,798 A.2d at 434; Fund for Community Progress, 695 A.2d at 523. The party seeking an injunction "must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." Nat'l Lumber Bldg.Materials Co., 798 A.2d at 434 (quoting Fund for CommunityProgress, 695 A.2d at 523)). "[I]njuries that are prospective only and might never occur cannot form the basis of a permanent injunction." Nat'l Lumber Bldg. Materials Co.,798 A.2d at 434 (quoting Rhode Island Turnpike Bridge Auth. v. Cohen,433 A.2d 179, 182 (R.I. 1981)). In addition, the party seeking injunctive relief must show likely success on the merits and demonstrate that the public-interest equities weigh in favor of issuing an injunction. Nat'l Lumber Bldg. Materials Co.,798 A.2d at 434; Fund for Community Progress, 695 A.2d at 521.
Pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 §§9-30-1 through 9-30-16, the Superior Court "shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." G.L. 1956 § 9-30-1. The decision to grant a remedy under the Uniform Declaratory Judgments Act lies within the sound discretion of the trial justice. G.L. 1956 § 9-30-6;Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997) (citation omitted).
 ANALYSIS
In this dispute, both parties are claiming ownership of the tradename "3% Realty." Neither party has registered "3% Realty" as a tradename, thus all claims and counterclaims are premised upon the common law.[4]
A. A TRADENAME AT COMMON LAW
A tradename is a name that "is distinctive of a person's business or other enterprise and that is used in a manner that identifies that business or enterprise and distinguishes it from the businesses or enterprises of others." Nat'l Lumber Bldg.Materials Co., 798 A.2d at 433 (citing Restatement (Third)Unfair Competition § 12 (1995)). Trademark and tradename protection is based upon common law concepts of unfair competition. See Trade-Mark Cases, 100 U.S. 82 (1879); seealso Nat'l Lumber Bldg. Materials Co., 798 A.2d at 433. The purpose underlying tradename protection is to designate goods and services as the product of a particular trader and to preserve the goodwill associated with the name. Sayles BiltmoreBleacheries Inc. v. Narragansett Wiping Supply Co., 86 R.I. 99,106, 134 A.2d 57, 61 (1957) (citing United Drug Co. v. TheodoreRectanus Co., 248 U.S. 90, 97 (1918)). Although formal trademark registration may constitute presumptive evidence of trademark ownership, G.L. 1956 § 6-2-4, it is not an essential condition to establishing a protectable proprietary interest at common law.
There are no rights in a tradename alone. See SaylesBiltmore Bleacheries Inc., 86 R.I. at 106, 134 A.2d at 61; seealso United Drug Co., 248 U.S. at 97. To receive tradename protection at common law, the party asserting ownership must demonstrate that it has actually used the name in the conduct of business. Sayles Biltmore Bleacheries Inc., 86 R.I. at 106,134 A.2d at 61 (citing Jackman v. Calvert Distillers Corp. ofMass., 306 Mass. 423, 426, 28 N.E.2d 430 (1940) (noting that a tradename can have no existence in gross, independent from some business in which it is used). According to G.L. 1956 § 6-2-1(8), a name is deemed to be "used" in this state ". . . when it is used or displayed in the sale or advertising of services, and the services are rendered in the state." Id.
The Parties to this case acknowledge that the tradename "3% Realty" was continuously used by J P Realty Partnership in the conduct of business for over twenty years. Accordingly, the Partnership has used the tradename in a manner sufficient to establish common law rights. See Sayles Biltmore BleacheriesInc., 86 R.I. at 106, 134 A.2d at 61; see also United DrugCo., 248 U.S. 90; Restatement (Third) Unfair Competition § 12 (1995).
The Defendants, however, contend that it was never the intent of Iaciofano, Sr., the former principal of J.P. Iaciofano, Inc., for the Partnership to acquire ownership rights in the tradename. Rather, the Defendants claim that J.P. Iaciofano, Inc. was merely permitting the Partnership to use the tradename allegedly owned by the Corporation, and now that Iaciofano, Sr. no longer has an interest in the Corporation, he can no longer act on its behalf and authorize such use by the Partnership.
Even were this Court to credit the Defendants' argument relative to the intent of Iaciofano, Sr., it is use, not intent, that determines common law ownership of a tradename. SeeSayles Biltmore Bleacheries Inc., 86 R.I. at 105,134 A.2d at 61. An entity cannot claim ownership rights in a tradename that has not been used in the conduct of business. See id; seealso 74 Am. Jur. 2d Trademarks and Tradenames § 8 (noting that mere adoption of a tradename, without bona fide use, in an attempt to reserve a mark for use in the future will not establish tradename rights).
Although Iaciofano, Sr. testified that J.P. Iaciofano, Inc. conducted business using the "3% Realty" tradename during some period of time in the 1960's and 1970's, no evidence has been introduced by the Defendants to corroborate such testimony. "Where a dearth of documents and witnesses as to use of a mark in years past makes it difficult to prove either use or nonuse of a mark, the decision maker is justified in drawing inferences from the evidence that does exist." 2 J. McCarthy, Trademarks andUnfair Competition, § 17:9 (4th ed. 2004). This Court would therefore be justified in finding a lack of credible evidence of use by the Corporation.
Even if this Court were to find that J.P. Iaciofano, Inc. did engage in the conduct of business in the 1960's and 1970's using the name "3% Realty," thereby establishing rights in the tradename, there is competent evidence suggesting that such rights have since been abandoned. Abandonment is the concurrence of nonuse of a tradename and an intent to abandon such tradename.T T Mfg. Co. v. A.T. Cross Co., 449 F.Supp 813, 825 (D.R.I. 1978) (citing Saxlehner v. Eisner Mendelson Co., 179 U.S. 19,31) (1900)) (citations omitted). Intent to abandon may be inferred from facts surrounding a physical abandonment. T TMfg. Co., 449 F.Supp at 825 (citing Sheila's Shine ProductsInc. v. Sheila Shine, Inc., 486 F.2d 114, 124 (5th Cir. 1973)). In this case, such intent may be inferred from the Partnership's exclusive and continuous use of the tradename for over twenty years without any claim of ownership by J.P. Iaciofano, Inc. until the present time.
Furthermore, the Corporation's intent to abandon may be inferred from the lack of any licensing agreement between J.P. Iaciofano, Inc. and the Partnership. If indeed the Defendants wished to allow the Partnership to use the name "3% Realty" without the Partnership acquiring proprietary rights therein, it could have entered into a licensing agreement. See Restatement (Third), Unfair Competition, § 33. A licensee using the name pursuant to the license would not be able to acquire ownership rights in the name, and therefore is ordinarily estopped from asserting ownership of the designation as against the licensor.Id.
The fact that J.P. Iaciofano, Inc. filed a Fictitious Business Name Statement with the Secretary of State in 1986 designating "3% Realty" as the Corporation's fictitious business name does not give rise to an inference of tradename ownership. Not only has J.P. Iaciofano, Inc. recently abandoned its fictitious business name pursuant to G.L. 1956 § 7-1.1-7.1(c), but the filing for a fictitious business name does not confer exclusive rights to use such name as a tradename. A fictitious business name is intended primarily to provide the public with a means of ascertaining the identities of corporations doing business under a fictitious name. See Restatement (Third) Unfair Competition
§ 12 (1995). Obtaining rights to a fictitious name has no bearing on the common law of tradenames and the "acceptance of a corporate name by a state agency will be given no judicial weight at all in litigation over rights to the name." 1 J. McCarthy,Trademarks and Unfair Competition, at §§ 9:8-9:9 (noting that ". . . [t]he fact that [a] defendant merely filed a fictitious name registration . . . is entitled to little, if any, weight in litigation over the corporate or fictitious name").
Based on the foregoing, this Court finds that J.P. Iaciofano, Inc. has not established a proprietary interest in the tradename "3% Realty" and is thereby barred from use of said tradename. Permitting J.P. Iaciofano, Inc. to utilize "3% Realty" in the conduct of future business would have the unjust result of allowing the Corporation to reap the benefits of the reputation and goodwill of an established business. The possibility of damaging the good will and reputation of a business "is precisely the type of irreparable injury for which an injunction is appropriate." Cicione v. Café Renaissance, Inc., No. 00-5219, 2000 R.I. Super LEXIS 94, at *5-6 (R.I. Nov. 3, 2000) (citingFund for Community Progress, 695 A.2d at 523). Such injury can be deemed "imminent" because Iaciofano, Jr. and Gina Iaciofano have already filed Articles of Incorporation under the name "Three Percent Realty Inc." and have expressed an interest in selling real estate using such name. See e.g. Rhode IslandTurnpike Bridge Auth., 433 A.2d at 179.
Furthermore, the evidence submitted in this case has established that there is a strong probability that consumer confusion will result if the Defendants are not enjoined from using such tradename. See Nat'l Lumber Bldg. Materials Co.,798 A.2d at 434; see also Fund for Community Progress,695 A.2d at 523. Consequently, public interest equities also weigh in favor of enjoining the Defendants from using the Partnership's tradename to prevent any confusion that could arise for both existing and potential customers of J P Realty Partnership.See Nat'l Lumber Bldg. Materials Co., 798 A.2d at 434;see also Fund for Community Progress, 695 A.2d at 521.
Having concluded that J.P. Iaciofano, Inc. has no proprietary interest in the tradename "3% Realty", this Court need not discuss the Defendants' remaining claims of infringement and misappropriation.[5]
B. IS THE TRADENAME PROTECTABLE AT COMMON LAW
Use alone does not create a protectable proprietary interest in a tradename. Once a business or other entity has established common law rights in a particular tradename, the question then shifts to whether the name is distinctive, either by being "inherently distinctive" or by having acquired distinctiveness through secondary meaning.[6] Courts have created four categories of terms in order to measure the distinctiveness of a tradename. Boston Beer Co., 9 F.3d at 180. In ascending order of strength they are: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.[7] see id. A tradename is considered "inherently distinctive" and is entitled to protection without proof of secondary meaning if it is suggestive, fanciful or arbitrary, as opposed to descriptive or generic. See id. Determining whether a term is inherently distinctive is a question of fact. See Wiley,
762 F.2d at 141(citing Brooks Shoe Manufacturing Co. v. Suave Shoe Corp.,716 F.2d 854, 857 (11th Cir. 1983)); see also Boston BeerCo., 9 F.3d at 180.
Inexplicably, neither party discussed the issue of distinctiveness either at trial or in posttrial memoranda; however, based on the evidence presented, this Court finds that the Partnership's tradename is a suggestive term.[8] The line between descriptive terms, (requiring proof of secondary meaning), and suggestive terms, (wherein no proof of secondary meaning is required), is often quite subtle and cannot be determined by an application of any hard and fast rules. SeeRailroad Salvage of Conn., Inc., 561 F.Supp. at 1020. Rather, such distinction is determined on a case-by-case basis. Id.
According to the "imagination test," developed by courts to assist with the determination of whether a mark is descriptive or suggestive, "[t]he more imagination that is required on the customer's part to get some direct description of the product from the term, the more likely the term is suggestive, not descriptive." 2 J. McCarthy, Trademarks and Unfair Competition,
at § 11:67. "If a mental leap from the mark to the particular product is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." Id.
In the present case, the words and symbols for which protection is sought do not represent the basic services provided by the Partnership, nor do they accurately describe such services without the consumer having to use some imagination and perception. The term "Realty" does indicate that real estate services are available to consumers. However, the numerical and symbolic representation of "3%" combined with "Realty" requires the consumer to use some imagination and perception to determine the exact nature of the Partnership's services. The consumer must make a mental leap between the tradename "3% Realty" and the service provided — a brokerage business offering a three percent commission rate. Where imagination and perception is essential to classify the tradename at issue, the name will be considered inherently distinctive. See Railroad Salvage of Conn., Inc.,561 F.Supp. at 1020.
This Court thereby finds that "3% Realty" is inherently distinctive and, therefore, is entitled to protection as a common law tradename under Rhode Island law without proof of secondary meaning.[9]
 CONCLUSIONS OF LAW
The above analysis leads to the following conclusions of law:
1. The name "3% Realty" is a common law tradename entitled to protection.
2. The Court finds and declares that J P Realty Partnership, through its exclusive and continuous use of the name "3% Realty" in connection with the conduct of its real estate brokerage business by its general partners from the early to mid-1980's through February, 2004, owns the tradename "3% Realty", and has the exclusive right to use the tradename in the conduct of the real estate brokerage business in Rhode Island.
3. Neither J.P. Iaciofano, Inc., nor Joseph F.C. Iaciofano, nor Gina Iaciofano has any ownership rights in the name "3% Realty."
4. Neither Joseph P. Iaciofano nor Peter Colannino have the right to use the name "3% Realty" or any other deceptively similar name in the conduct of the real estate brokerage business in Rhode Island other than in connection with acting as general partners in the partnership known as J P Realty Partnership.
5. That Plaintiff is entitled to injunctive relief in that he lacks an adequate remedy at law and, in the absence of an injunction, will suffer irreparable harm. The threatened injury to the Plaintiff outweighs any harm to the Defendant from granting of such injunctive relief.
 RELIEF
In accordance with the above findings of fact and conclusions of law, the Court will enter judgment for the Plaintiff, and will order the following declaratory and injunctive relief:
1. The Court finds and declares that the name "3% Realty" is an inherently distinctive tradename of the partnership known as J P Realty Partnership.
2. That J P Realty Partnership owns the said tradename, and is entitled to its exclusive use in connection with transacting business as a real estate brokerage business within the State of Rhode Island.
3. That Defendants, and each of them, and all persons or entities acting in concert with said Defendants, are permanently enjoined from use of the tradename "3% Realty," "Three Percent Realty," or any other deceptively similar name in the transaction of any business as real estate brokers or in connection with real estate sales in the State of Rhode Island.
4. That the Defendants and each of them, and all persons or entities acting in concert with said Defendants, are permanently enjoined from interfering with Plaintiff's use of the tradename "3% Realty" insofar as the said tradename is used by the Plaintiff in furtherance of the business of that general partnership known as J P Realty Partnership.
5. That neither general partner in that partnership known as J P Realty Partnership shall interfere with the rights of the other general partner in access to the books, records and accounts of the said Partnership, or in the conduct of that business conducted by the Partnership under the tradename "3% Realty."
6. That neither Joesph P. Iaciofano nor Peter Colannino shall have the right to use the name "3% Realty" or any other deceptively similar name in the conduct of the real estate brokerage business in Rhode Island other than in connection with acting as general partners in the partnership known as J P Realty Partnership.
The parties shall prepare and submit an appropriate form of judgment consistent with this decision.
[1] The Complaint seeks, inter alia, to enjoin the Defendants from interfering in any manner with the operation of J P Realty Partnership's business and use of the tradename "3% Realty", as well as to enjoin Defendants from themselves using the name "3% Realty." Although the Complaint does not contain a count denominated as one for declaratory judgment, it appears to the Court that the parties have tried both claims and counterclaims for declaratory relief, and in accordance with Super. Ct. R. Civ. P. 15(b), the Court will deem the Complaint to include such a claim based upon the implied consent of the parties. A proposed Amended Complaint that was not materially different than the original pleading was filed; however leave of Court was not obtained, and the original complaint is the controlling pleading.
[2] The Amended Counterclaim includes counts for misappropriation, infringement, and a declaratory judgment.
[3] The Plaintiff also sought injunctive relief to prevent the Defendants from interfering with his conduct of Partnership business from the business premises that he had been using in conjunction with the name "3% Realty." During the pendency of these proceedings, all parties have ceased conducting business using that name from the business premises at 1920 Mineral Spring Avenue, North Providence, Rhode Island. Accordingly, it appears that injunctive relief in that respect is now unnecessary.
[4] For the purposes of this decision, the terms "tradename" and "trademark" will be used interchangeably. Although there are differences between the two relative to registration under the Lanham Act, the differences are not pertinent to the decision of this case. Boston Beer Co. v. Slesar Bros. Brewing Co., Inc.,9 F.3d 175, 177 (1st Cir. 1993) (citations omitted).
[5] To succeed in a common law infringement claim, the party asserting the claim must prove the existence of a valid common law tradename. See e.g. Sayles Biltmore Bleacheries Inc.,86 R.I. at 105, 134 A.2d at 61 (noting that there must be a first use of a tradename before there can be claims of an unlawful second use). Establishing a prima facie case of misappropriation at common law requires the court to characterize the "thing" being misappropriated as a property right belonging to the party alleging the misappropriation. See 2 J. McCarthy, Trademarksand Unfair Competition, at § 10:47.
[6] Secondary meaning, described as "consumer acceptance and recognition of [a descriptive tradename] as denoting only one seller or source," 2 J. McCarthy, Trademarks and UnfairCompetition, at 11:9, must be established by competent evidence that the customer base identifies the producer or his goods with the tradename in question; however, a party may make such a showing by inference. Nat'l Lumber Bldg. Materials Co.,
789 A. 2d at 432 (citing Charles J. Donnelly, Inc. v. DonnellyBros., Inc., 96 R.I. 255, 263, 191 A.2d 143, 1467 (1963)).
[7] A generic term informs the buyer what the product or service is, not where it came from, and is never entitled to receive trademark protection. See Wiley v. American GreetingsCorp., 762 F.2d 139, 141 (1st Cir. 1985). A descriptive term conveys an immediate idea of the article or service to which it refers. Railroad Salvage of Conn., Inc. v. Railroad Salvage,Inc., 561 F.Supp. 1014, 1020 (D.R.I. 1983). (citation omitted). A suggestive term suggests, rather than describes some aspect of the goods, services or business and requires the use of the consumer's imagination and perception to identify the nature of the product or service. See id. An arbitrary or fanciful term has no relation to the nature of the product or service. Seeid.
[8] The tradename "3% Realty" is not generic because it does not refer to the basic nature of the service offered. RailroadSalvage of Conn., Inc., 561 F.Supp. at 1020. The arbitrary/fanciful grouping also need not be considered because both parties have acknowledged a nexus between the tradename at issue and the service provided, namely that the Partnership does offer realty services. See id.
[9] Having found the words "3% Realty" to be inherently distinctive, the Court need not analyze whether the Plaintiff has met the burden of proving secondary meaning, either by direct evidence or by inference. See Nat'l Lumber Bldg. MaterialsCo., 789 A. 2d at 434-34.