DECISION
Before this Court are motions by petitioners Barbara Peck and Jeffrey Cote (Petitioners) to amend their petition to appoint a receiver and a motion for the appointment of a permanent receiver of Jonathan Michael Builders, Inc. (Respondent), a Rhode Island corporation the stock of which is owned entirely by the Petitioners. Avalon Holdings, LLC (Avalon), a creditor of Respondent, objects to the appointment of a receiver and has filed a motion to dismiss the petition on various grounds. As the motions raise issues that could broadly impact receivership practice in Rhode Island, several amici have filed briefs with the Court. Jurisdiction of this matter pursuant to G.L. 1956 §7-1.2-1316 and the court's inherent powers as an equity court, is discussed below.
 Facts/Travel
Respondent was in the construction business before ceasing operations. (Pet. Appt. Receiver, ¶¶ 1, 2, Mar. 15, 2006.) Avalon alleges that it previously had contracted with Respondent for the construction of a residential home in Jamestown. Construction has ceased on the property, however, and in March, 2005, Avalon brought suit against Respondent alleging breach of contract and unjust enrichment.
On March 15, 2006, while the construction litigation was pending, the shareholders of Respondent filed a petition for the appointment of a receiver in the Superior Court of Kent County. In support of their petition, they alleged that Respondent was insolvent, and that receivership was necessary to prevent the dissipation and depreciation of its assets. The Court appointed Theodore Orson as temporary receiver pending the outcome of the hearing to determine whether a permanent receiver would be appointed. (Order Appt'ing Temp. Receiver, Mar. 15, 2006.) Consistent with the usual practice, that Court also enjoined the continuation of any pending lawsuits against Respondent, including Avalon's. Id. ¶ 7. Avalon filed an objection and motion to dismiss, arguing that the court does not have jurisdiction to appoint a receiver in this case.
The Petitioners responded with a motion to amend which provided additional grounds for their petition to appoint a receiver. The amended petition reflects that a shareholder meeting occurred on March 15, 2006 and that the Petitioners had voted to dissolve the corporation. Each shareholder has also signed an "Action by Unanimous Consent of the Stockholders," dated May 14, 2006, which purports to ratify the results of the March 15, 2006 shareholder meeting and independently resolves to dissolve the corporation. (Mot. Am. Pet. Appt. Receiver ¶¶ 2, 3, 6 App. A.) That motion to amend has not yet been granted by the Court. A hearing was scheduled, but the case was continued to allow interested persons to file amicus briefs with the Court. (Order Grant. Mot. Continue Hr'g, May 23, 2006). Subsequently, the case was transferred sua sponte from Kent County to Providence County. (Sua Sponte Order Tranf. Case to Providence Cty, Jun. 6, 2006).
Before the Court are the Petitioners' motion to amend their petition, the motion to appoint a permanent receiver for Respondent, and Avalon's motion to dismiss the petition.
 Analysis
The Petitioners allege several statutory and equitable grounds for the appointment of a receiver and argue that any one alone would be sufficient to confer jurisdiction on the Court. Avalon, in response, presents various arguments as to why none of these grounds is applicable to Respondent — an insolvent corporation the two shareholders of which unanimously seek the appointment of a liquidating receiver. The Court will first provide an overview of the statutory scheme pertaining to dissolution and receivership, and analyze the petition under that scheme. It will then consider the nature of the Court's inherent equitable power and whether that power allows the Court to appoint a receiver for Respondent.
Statutory Scheme for the Liquidation and Dissolution of aCorporation
Part 13 of the Rhode Island Business Corporation Act (BCA), titled "Dissolution and Revocation," contains the provisions for receiverships. G.L. 1956 §§ 7-1.2-1301 to 1325.[1] At the outset, it is important to note the distinction between certain terms used in the statute. "Liquidation" is the process of marshalling a corporation's assets, selling them, and distributing those assets to the corporation's creditors and shareholders. See § 1316. "Dissolution" is the act that terminates the existence of the corporate entity, and may be accomplished either at the behest of the corporate principals ("voluntary") or by court decree ("involuntary"). See §§ 1301-1303, 1308-09 (providing procedures for a voluntary dissolution); § 1320-21 (providing for an "involuntary" dissolution by court decree). Liquidation and dissolution are not equivalent — liquidation is merely one step in a process that terminates with the dissolution of a corporation. See 16 William Meade Fletcher et. al., Cyclopedia of the Law of PrivateCorporations § 7667.50 (perm. ed., rev. vol. 1998) (hereinafter "Fletcher"). The appointment of a receiver is also distinct from both liquidation and dissolution. Id.[2] "Insolvent" is defined by the BCA as "the inability of a corporation to pay its debts as they become due in the usual course of its business." § 106(8).
Sections 1314 and 1316 of the BCA give the Court power to appoint a receiver when the Court is supervising the liquidation of a corporation. Section 1314 enumerates grounds[3] for a shareholder, creditor, or the Attorney General to petition for liquidation, while § 1316 provides for the appointment of receivers in liquidation proceedings.[4] In the case of a shareholder action,
 "the superior court has jurisdiction to liquidate . . . when it is established that, whether or not the corporate business has been or could be operated at a profit, dissolution would be beneficial to the shareholders because:
 (i) The [directors or controlling shareholders] are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock; or
 (ii) The acts of the [directors or controlling shareholders] are illegal, oppressive, or fraudulent; or
 (iii) The shareholders are deadlocked in voting power. . . .
(iv) The corporate assets are being misapplied or are in danger of being wasted or lost; or
 (v) Two (2) or more factions of shareholders are divided and there is such internal dissension that serious harm to the business and affairs of the corporation is threatened; or
 (vi) The holders of one-half (1/2) or more of all the outstanding shares of the corporation have voted to dissolve the corporation." Section 1314(a)(1).
The Petitioners have sought appointment of a receiver, interalia, under the jurisdiction conferred by § 1314(a)(1)(vi).[5]
The Petitioners also rely on §§ 1302-03,[6] which provide for the voluntary dissolution of a corporation. Once the shareholders of a corporation adopt a resolution to dissolve:
 "(1) The corporation shall execute and file articles of dissolution in accordance with §§ 7-1.2-1308 and 7-1.2-1309.
 . . . .
 (3) The corporation shall proceed to . . . liquidate its business and affairs. After paying or adequately providing for the payment of all its obligations, the corporation distributes the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.
 (4) The corporation, at any time during the liquidation of its business and affairs, may apply to a court of competent jurisdiction . . . to have the liquidation continued under the supervision of the court as provided in this chapter." Section 1302(b) (emphasis added).
The person filing articles of dissolution must state that all outstanding obligations have been paid, or that adequate provision for payment has been made, prior to filing the articles. Section 1308.
Here, the two shareholders of Respondent have unanimously resolved to dissolve the corporation and argue that this is sufficient grounds for the appointment of a receiver under § 1302 and § 1314(a)(1)(vi).[7] Avalon argues, however, that an insolvent corporation may not voluntarily dissolve under § 1302 because, by definition, see § 106(8), an insolvent corporation cannot possibly make adequate provision for its debts. It further agues that § 1314(a)(1)(vi) "provides the jurisdiction for judicial dissolution only where dissolution has been otherwise authorized by the voluntary dissolution provisions" of §§ 1302-03. As a result, it seeks dismissal of the petition to appoint a receiver.
Avalon's argument is only partially correct, however, because § 1314 does not provide for dissolution at all — it provides for liquidation. It is true that an insolvent corporation could not voluntarily dissolve because it could not truthfully proclaim that adequate provision has been made for all of the corporation's debts and obligations. See §§ 1302(b)(3), 1308. It may liquidate, however, as long as the corporation passes a resolution to dissolve under § 1302 or § 1303, and the court may supervise that liquidation with a receiver. Section 1302(b)(4). In fact, as the amici point out, it is the insolvent corporation that most often requires a court-supervised liquidation to avoid a "race-to-the-courthouse" by its creditors. So Avalon's contention that only a solvent corporation may voluntarily dissolve, while correct, does not deprive the court of jurisdiction to appoint a receiver because liquidation is not dissolution.
Nothing in either § 1302 or § 1314 dictates a contrary result. In fact, § 1302 expressly states that the corporation, "at any time during the liquidation of its business and affairs, may apply to a court of competent jurisdiction . . . to have the liquidation continued under the supervision of the court as provided in this chapter." Section 1302(b)(4). Appointing a liquidating receiver under § 1302 is also entirely consistent with the jurisdictional requirement of § 1314 because one-half of the shareholders will have voted to dissolve under the procedures in § 1302. See § 1314(a)(1)(vi).
After the receiver finishes liquidating the corporation's assets, dissolution may be accomplished by seeking an order from the Court. The receiver may obtain a decree of dissolution by demonstrating either that all debts and obligations have been paid, or that "all the property and assets have been applied as far as they will go" to the payment of the corporation's debts. Section 1320; see § 1321 (providing that the court clerk shall file the decree of dissolution with the Secretary of State).
It is true that, under § 1314(a), insolvency is not a stated ground for shareholders to seek liquidation, while it is a ground for a creditor to seek liquidation. However, this does not prohibit the shareholders of an insolvent corporation from obtaining the appointment of a liquidating receiver, as Avalon argues. If a majority of shareholders of an insolvent corporation seek liquidation, they may do so by voting under § 1314(a)(1)(vi). If less than a majority of shareholders wish to seek liquidation, they have a higher burden of proving mismanagement, waste, or loss under § 1314(a)(1)(iv), but receivership is still permitted. In either case, though, nothing in the statute bars the appointment of a liquidating receiver for an insolvent corporation — only voluntary dissolution is impossible for such corporations.
For these reasons, the Court finds that it has jurisdiction under § 1314(a)(1)(vi) and § 1302(b)(4) to appoint a liquidating receiver to an insolvent corporation such as Respondent.
The Court's Equitable Jurisdiction To Appoint a Receiver
The Petitioners, Avalon, and amici have devoted much effort to arguing the nature of the Court's equitable jurisdiction and whether it affords a basis for the appointment of a receiver independent from the statutory grounds. The Petitioners and theamici argue that even if none of the statutory grounds has been met, the Court has inherent power to appoint a receiver. Avalon argues that equity must follow the law — that courts of equity cannot disregard established clear statutory directives. If the statutory grounds have not been met, Avalon argues that the Court may not rely on its inherent powers as an equity court for jurisdiction to appoint a receiver. Id. Therefore, the Court will assume arguendo that petitioners have not satisfied any statutory grounds, and Court will address the equitable concerns in determining whether to appoint a receiver. Even if the statutory grounds have been met, the decision to appoint a receiver is still a discretionary one, so an examination of the relevant equitable principles is necessary. See Levine v. BessEaton Donut Flour Co., 705 A.2d 980, 983 (R.I. 1998), and discussion infra.
The use of receivers originated in the courts of chancery in England and was considered one of the more important inherent powers of an equity court. See Ralph Ewing Clark, A Treatiseon the Law and Practice of Receivers, §§ 10, 283 (3d. ed. 1959) (hereinafter "Clark on Receivers"); 16 Fletcher § 7668 (finding that the power to appoint receivers is generally thought of as inherent in an equity court). Receiverships developed as a means to protect property during an equitable proceeding for the party ultimately entitled to possess it. See 16 Fletcher § 7671. In certain cases, the court's power could be applied to corporations. In order to "conserve the assets of the corporation and preserve its property for those interested therein, equity has inherent jurisdiction, independently of statute, to appoint a receiver" in certain cases. Petrovics v. King Holdings,56 R.I. 498, 501, 188 A. 514, 515 (1936).
Courts of Equity Have No Inherent Power to Dissolve aCorporation
While there appears to be a longstanding tradition of equity courts using receivers in a variety of circumstances, the Court questions whether that power extends quite as far as the amici
suggest. They write that there is "no doubt" that Rhode Island courts have "equitable powers to appoint receivers as they deemnecessary to protect a corporation and its assets." (Am. Brief of Shine, Finkle, Ferucci 5, citing § 1323) (emphasis added). While the courts of Rhode Island do have "the full powers of a court of equity," § 1323, those inherent powers are not unlimited.
Most notably, an equity court has no inherent power todissolve a corporation, since the creation and dissolution of a corporation is governed by statute. See 16 Fletcher § 7667.50; Clark on Receivers § 700(a).[8] Generally, the appointment of a receiver may not be the principal relief sought — it must be sought incidentally to some other requested relief that the court has power to grant. 16 Fletcher § 7683; Clark on Receivers § 701. Therefore, since equity courts lacked inherent power to dissolve a corporation, they also lacked the inherent power to appoint a receiver to wind up a corporation for purposes of dissolution.See Petrovics, 56 R.I. at 501, 188 A. at 515 (citations omitted) (noting that "[g]enerally speaking a court of equity has no jurisdiction[,] in the absence of statute, to appoint a receiver and dissolve a corporation"); 16 Fletcher § 7671, § 8198.
Without statutory authorization, the Court could not appoint a receiver solely for purposes of dissolving the corporation, because equity courts lack inherent power to dissolve a corporation. The grounds described in the relevant statutes are the sole grounds for appointing a receiver in order to dissolve a corporation. See discussion supra. Once grounds to appoint a receiver exist, various statutes confer upon the Court almost limitless authority to empower the receiver to carry out his duties.[9] This broad authority to empower the receiver, however, should not be confused with the authority to appoint the receiver in the first instance. In any event, the BCA affirmatively provides for the appointment of a liquidating receiver in the case at bar. See discussion supra.
Equitable Powers in Cases Other than Dissolution
While equity courts lack inherent power to appoint a receiver for dissolution, they do have such power in a variety of cases such as fraud or mismanagement, deadlock, or lack of governing officers. See 16 Fletcher § 7708-26. In these cases, the court's inherent power allows the appointment of a receiver either to liquidate the assets of the business, or to restore the corporation to order and return control to a new board of directors. See 16 Fletcher § 7667.50; see also § 1323 (allowing the appointment of a non-liquidating receiver). In either case, the Court intervenes in order to protect the interests of those persons — usually creditors and shareholders — who are ultimately entitled to the property. See 16 Fletcher § 7671.
The weight of authority appears to be that where statutes such as § 1314 enumerate the grounds for appointment of a receiver, those grounds are not exclusive, see 16 Fletcher § 7711 (noting, however, that some jurisdictions do find such statutes to provide the exclusive grounds for appointing a receiver). These statutes are usually described as confirming the traditional equity powers of a court, not limiting that power.Cambio v. G-7 Corp., No. 96-0705, 1998 R.I. Super. LEXIS 12, at *15-16 (R.I.Super.Ct. Feb. 11, 1998) (Silverstein, J.) (finding that Rhode Island's receivership statute was merely a codification of equitable principles; see 16 Fletcher §§ 7673, 7709 (finding receivership statutes in general to be merely declaratory of powers long-held to be within the inherent powers of equity courts).[10] Therefore, the Court finds that its inherent power to appoint a receiver is broad and has been supplemented by the statutory powers to liquidate and dissolve a corporation.
Jurisdiction Distinguished from Discretion
Even in cases where equity courts have jurisdiction, however, it does not necessarily follow that it is appropriate to exercise that jurisdiction. See 16 Fletcher § 7669; Clark on Receivers § 748(a). In exercising its discretion, the Court must look to whether "the usages and rules of equity" would allow the appointment of a receiver in a particular circumstance. Clark on Receivers § 748.[11] "A trial court abuses its discretion when it acts without reference to any guiding rules or principles," and while the appointment of a receiver is generally within the discretion of the trial judge, there are "certain well-established rules" to guide that discretion. 16 Fletcher §§ 7697, 7708; Levine, 705 A.2d at 983 (finding that the decision to appoint a receiver is left to the discretion of the trial justice); see also Fund for Community Progress v. UnitedWay, 695 A.2d 517, 521 (R.I. 1997) (noting that one appealing the exercise of a trial judge's discretion "bears a heavy burden").
Courts generally consider "(1) the possible existence of fraudulent conduct; (2) the danger of property being concealed, lost or diminished in value; (3) the adequacy of legal remedy; and (4) the harm to the movant if appointment is denied versus the harm to opposing parties if appointment is granted." 16 Fletcher § 7709. Courts of equity should usually hesitate to appoint a receiver at the petition of a creditor or minority shareholder because
 "[i]t is an assumption of the functions of the directors. It displaces the board of managers placed there by the stockholders, who sustain the relation of trustees for the stockholders, trustees for the corporation, and trustees for its creditors; and before the court will take charge of the corporation and thus displace its chosen directors and managers, it ought to have the clearest evidence of the absolute necessity for such extraordinary action for the protection of the creditors, stockholders, and all parties concerned." Guardian Financing Co. v. Davidson, 154 N.E. 743, 744 (Ohio Ct.App. 1924).
Another reason that courts should hesitate is that the expenses of receivership deplete the assets of the corporation, see 16 Fletcher § 7728, and the appointment can impair a corporation's ability to obtain credit, id. § 7696.50. Therefore, a receiver should only be appointed, in the absence of statutory authorization, "when the court can point to the specific allegation or allegations, sustained by credible evidence, that will justify such action." Petrovics, 56 R.I. at 501,188 A. at 515; see 16 Fletcher § 7697 (providing guidance on the proper exercise of discretion).
Though a court generally should hesitate to exercise its jurisdiction to appoint a receiver for a corporation, the propriety of appointing a receiver is well established in certain types of cases. 16 Fletcher § 7671. For example, an equity court may properly appoint a receiver pendente lite where necessary to preserve the subject matter of a suit. Id. §§ 7671, 7725. An equity court also has the power to appoint a receiver to administer a corporation's property when that corporation's existence as legal entity has terminated according to statute.Id. §§ 7671, 8201.[12] An equity court may appoint a receiver for an insolvent corporation when the applicant — usually a minority shareholder or a creditor — can show that he has an interest or lien in the property held by the corporation.See id. § 7687. Finally, a court may properly appoint a receiver for a corporation — solvent or insolvent — on grounds of "fraud or gross mismanagement on the part of the corporate officers," id. § 7714, deadlock among the shareholders, id. § 7713, lack of governing officers, id. § 7715, and various other grounds, see generally id. §§ 7708-26.[13]
Insolvency and the Misapplication, Waste, or Loss of aCorporations' Assets
In addition to asserting an inherent equitable power, the Petitioners have alleged that the corporation is insolvent and has ceased operations, and rely upon § 1314(a)(1)(iv) as grounds to appoint a receiver. This section provides that the Court has jurisdiction to liquidate when dissolution would be beneficial to the shareholders because "[t]he corporate assets are being misapplied or are in danger of being wasted or lost." Section 1314(a)(1)(iv). This Court finds that this section of the statute was meant to confirm the equitable jurisdiction of the Court to appoint receivers in cases of mismanagement and insolvency, and that analysis of this ground would be similar under both statutory and equitable principles. See Cambio, 1998 Super. LEXIS 12 at *15-16; 16 Fletcher § 7673 (finding that receivership statutes are usually held to be no more than confirmation of customary equity jurisdiction).
At common law, while insolvency itself was not sufficient grounds to appoint a receiver, equity courts did appoint receivers for insolvent corporations where additional facts were present. 16 Fletcher § 7718; see 16 Fletcher § 7720 (noting that insolvency coupled with mismanagement "is always grounds for receivership"); § 7716 (noting that cessation of business is a factor that courts will consider in appointing a receiver). For example, the Supreme Court has upheld the appointment of a receiver "for the benefit of the corporation and particularly to protect the interests of its numerous creditors." Edwards v.Miller, 131 A. 554, 556 (1925) (not found in R.I. Reports). InEdwards, the corporation could not pay its debts as they came due, the corporation's assets had been fraudulently transferred, and the Court found that a receivership was in the best interests of the creditors. Id. at 554-56. So allegations of insolvency weigh in favor of appointing a receiver, especially when the corporation intends to dissolve pursuant to statute.
Avalon argues that majority shareholders cannot rely upon an allegation of mismanagement, waste, or loss, because "the majority shareholders would have to be the persons doing the wasting, losing, and misapplying. In this case, Petitioners are the only shareholders." The Court agrees that it is at least unusual for two controlling shareholders to seek receivership on the grounds that corporate assets have been mismanaged. The typical mismanagement case is similar to Levine v. Bess EatonDonut Flour Co., where a minority shareholder sought the appointment of a receiver because the controlling shareholder was allegedly misappropriating corporate funds. See705 A.2d at 982. Similarly, in Edwards, the receiver was appointed for the benefit of all creditors over the objection of the controlling shareholder of the corporation, not at his petition. See
131 A. at 554-56; see also Leonard Levin Co. v. Star Jewelry Co.,54 R.I. 465, 466 (R.I. 1934) (appointing receiver at the petition of creditor); 16 Fletcher § 7714 (noting that allegations of mismanagement often originate from minority shareholders, and sometimes creditors).
If Avalon or any other creditor were petitioning for the appointment of a receiver, the Court would likely appoint one in order to provide for the orderly winding up of Respondent's business and an equitable distribution of assets. The Court finds, therefore, that the controlling factor here is not the identity of the petitioner, but the purpose for which the petition is sought. If the petition is brought in order to protect the interests of all creditors, then the Court will give great weight to that purpose.
On the other hand, the Court would hesitate to appoint a receiver for the sole purpose of delaying Avalon from pursuing its claims if it was the only interested creditor, or if it held a lien on the corporation's assets. See 16 Fletcher § 7694 n. 7citing Kokernot v. Roos, 189 S.W. 505, 507 (Tex.App. 1916) (setting aside the appointment of a receiver because it was sought solely for the purpose of seeking time to borrow money to pay off two liens). The corporation should not be able to seek the appointment of a receiver merely to gain time to borrow money to pay off liens. 16 Fletcher § 7694 n. 7.[14] However, Avalon holds no such lien.
This reasoning is supported by the argument of the amici that the Court would be justified in appointing a receiver because Respondent's shareholders have a fiduciary duty to its creditors. (Am. Brief of Shine, Finkle, and Ferucci 8-10.) They argue that this duty requires the Petitioners to seek receivership in order to prevent the dissipation of corporate assets in a "race to the courthouse." Id. The existence of a fiduciary duty to creditors appears to be well-settled in Rhode Island. See, e.g., Nat'lHotel Assocs. v. O. Ahlborg Sons, Inc., 827 A.2d 646, 657
(R.I. 2003); Olney v. Conanicut Land Co., 16 R.I. 597, 599,18 A. 181, 181-82 (1889); 15A Fletcher § 7369. The Court questions whether that duty requires the shareholders of an insolvent corporation to petition for receivership. However, that duty certainly allows the shareholders to seek receivership as a means of fulfilling their duty. Consequently, the Court finds that a receivership is appropriate for the purpose of protecting the interests of all of Respondent's creditors, in addition to Avalon, in the assets of the insolvent corporation. SeeEdwards, 131 A. at 554-56. That the petition was brought by the controlling shareholders on behalf of the creditors, rather than by a creditor directly, should not change this analysis.
Therefore, the Court finds that it has ample jurisdiction, both statutory and equitable, to appoint a receiver, and it will exercise its discretion to appoint a receiver to supervise the liquidation and eventual dissolution of Respondent.
 Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court grants the shareholder's motion to amend their petition to appoint a receiver. The Court also grants their petition to appoint Theodore Olson as permanent receiver to oversee the liquidation and eventual dissolution of Respondent.
The receiver may present an appropriate order consistent herewith which shall enter after due notice to counsel.
[1] Statutory citations are to the BCA, §§ 7-1.2-101 to 1804, unless otherwise noted. While the current codification was first enacted in 2004, P.L. 2004 ch. 216, § 2, the provisions for receivership and liquidation have been part of Rhode Island law, in a form substantially similar to the current provisions, for over 35 years. P.L. 1969, ch. 141, § 1 (compare § 1314 with former § 7-1.1-90; § 1316 with former § 7-1.1-91; § 1320 with former § 7-1.1-95; § 1321 with former § 7-1.1-96; and § 1323 with former § 7-1.1-97.1). Prior to 1969, the receivership provision took a different form. See G.L. 1956 § 7-5-17 (repealed by P.L. 1969, ch. 141, § 2).
[2] "The appointment of a receiver does not of itself dissolve a corporation, nor, indeed, does it necessarily lead to the dissolution of the corporation or the winding up of its business." 16 Fletcher § 7667.50.
[3] Whether this section provides the exclusive grounds for liquidation proceedings and receivership is disputed by the parties. The Court considers this question below in the discussion of the Court's equitable powers.
[4] In liquidation proceedings, the Court has authority to appoint a temporary receiver until a full hearing can be held, and then to appoint a permanent receiver "with authority to take charge of any of the corporation's estate . . . and to collect the assets of the corporation." Section 1316(a)-(b). The receiver is then directed to satisfy the debts of the corporation and has broad authority to conduct the acts necessary to wind up the corporation, subject to Court supervision. Section 1316(d).
[5] The shareholders also rely on § 1314(a)(1)(iv), but this is addressed in the Court's discussion of its equitable powersinfra.
[6] Shareholders rely on both § 1302 ("Voluntary dissolution by consent of shareholders") and § 1303 ("Voluntary dissolution by act of corporation"). Shareholders clearly have complied with the procedures in § 1302 which require only that all shareholders vote to dissolve. Since they have so voted, any possible procedural shortcomings under § 1303 are of no consequence because the shareholders may proceed under the identical provisions in § 1302. Compare § 1302(b)(1)-(4) with § 1303(3)-(7) While the Court refers to the relevant paragraphs of § 1302 for clarity, its reasoning is equally applicable to the analogous provisions of § 1303.
[7] Therefore, by the terms of the statute, dissolution is deemed beneficial to the shareholders, and the Court need not examine their motives.
[8] "In the absence of a statute, no court of equity can dissolve or take away the corporate right to be a corporation which has been granted by the legislature, although a law court may try the validity of a corporate organization existing under the forms of law." Clark on Receivers § 700(a) (footnotes omitted).
[9] See § 1316(d) ("providing that the "liquidating receiver or receivers has authority subject to court order . . . generally to do all other acts which might be done by the corporation or that is necessary for the administration of his or her trust according to the course of equity . . . The order appointing the receiver or receivers sets forth their powers and duties"); seealso 1316(a) (providing similar authority for temporary receivers in liquidation proceedings); § 1323 (providing similar authority for non-liquidating receivers).
[10] "Such courts [of equity] . . . may by statute have their powers of appointing receivers extended beyond the well-recognized usages and rules of equity, and they may likewise, but in fact, do not often have their powers limited." Clark on Receivers § 283.
[11] "When courts of equity . . . fail properly to follow a statute . . . or in the absence of a statute, violate the usages and rules of equity," then they have committed reversible error, but it would still be incorrect to say that the courts lacked the inherent power or jurisdiction to appoint a receiver. Clark on Receivers § 748; see 16 Fletcher § 7669. This distinction is important because this type of error, while reversible on appeal, is not jurisdictional and not subject to collateral attack in another proceeding. See Clark on Receivers § 305.
[12] This is not to be confused with liquidation proceedings where the corporate entity has not yet terminated. For example, a receiver may be appointed following the expiration of a corporate charter, see Grand Rapids Trust Co. v. Carpenter,229 Mich. 491, 492 (Mich. 1924) (corporation's term of corporate existence, fixed by statute, had expired), or when a corporation's articles of incorporation have been revoked, see G.L. 1956 § 7-1.2-1310
(providing for the Secretary of State to revoke a corporation's articles of incorporation when, among other grounds, corporate formalities have not been followed).
[13] In such cases, statutes conferring jurisdiction in equity courts are held to be no more than confirmation of customary equity jurisdiction. 16 Fletcher § 7673.
[14] Historically, it was not the purpose of receivership to "call a moratorium against creditors." See Clark on Receivers. § 753. The court would not exercise its equitable powers in just any case:
 "It is not the business or the duty of courts . . . at the instance of the corporation itself to carry on the corporate business of those companies which find themselves in financial straits. . . . [T]he main purpose of a receivership is to preserve property at the instance of the plaintiff because of fear of destructionor dissipation caused by the defendant. . . . If the company is in possession and control of its property, it should be unnecessary for the company to apply to the court and ask that a receiver be appointed to preserve or protect such property." Clark on Receivers § 752.