DECISION
This matter is before the Court for decision with respect to Plaintiffs' Motion for a Temporary Restraining Order. Plaintiffs, Heritage Healthcare Services, Inc., Vito's Express, Inc. and Swimming Pool Specialists, Inc., are named Plaintiffs and seek class action status for this action which was instituted in 2002 against the Beacon Mutual Insurance Company ("Beacon") et al. Plaintiffs' complaint, presently in its eighth iteration, (with a suggestion of further amendments to come) essentially details wrongdoing by Beacon which resulted in injury to its policy holders in their capacities as owners rather than insureds and seeks inter alia damages, both actual and punitive. For a further overview of the matters in controversy, both directly and indirectly in this case, generally see Heritage HealthcareServices, Inc. v. The Beacon Mutual Insurance Company, et al. 2007 R.I. Super. LEXIS 61, 2005 R.I. Super. LEXIS 140; and 2004 R.I. Super. LEXIS 29 and Heritage Healthcare Services, Inc. v. Michael Marques, Director,Department of Business Regulation and the Beacon Mutual InsuranceCompany, 2007 R.I. Super. LEXIS 112. *Page 2 
The relief here requested by Plaintiffs arises out of the entry of a consent order ("Consent Order") in certain proceedings before the Department of Business Regulation ("DBR") (which by agreement of the parties and the Court in this proceeding was permitted as amicus curiae to file its brief in opposition to Plaintiffs' motion).
The proceedings before the DBR initially consisted of its undertaking a Market Conduct Examination, so-called, pursuant to the provisions of § 27-13.1-1 et seq. of Beacon concerning pricing of workers' compensation insurance. DBR is the primary regulator of Beacon under Rhode Island Law. Toward mid-2006, DBR announced that it was expanding that examination to include a forensic audit. Beacon either in response to that announcement or coincidentally shortly thereafter established the so-called Almond Commission, chaired by a distinguished former United States District Attorney for the District of Rhode Island and Governor of Rhode Island, which engaged Giuliani Security and Safety LLC to conduct an investigation for the Commission. The report of the Commission (including the investigative report of Giuliani) essentially was incorporated into Plaintiffs' complaint and to a great extent, forms the basis for claims asserted in the current version of that complaint.
Recently, DBR concluded its Market Conduct Examination and after receiving comments (as authorized by law) from Beacon, negotiated the Consent Order referred to above. Plaintiffs' motion seeks to restrain and enjoin Beacon from performing certain of its obligations under the Consent Order. Specifically, the Consent Order requires Beacon to refund approximately $7 million dollars to Eligible Policy Holders whose policies were initiated between the dates of October 1, 2005 and September 30, 2006. *Page 3 
Implementation of this Order at best is months away and DBR has not even started determining the manner in which this provision will be implemented. The Consent Order also provides for the immediate imposition of an administrative penalty of $2,500,000; provides for the payment on August 27, 2007, of the first $500,000 of that penalty (now by agreement continued to September 10, 2007) with another $500,000 to be paid by December 15, 2007. The Consent Order further provides that if Beacon complies with all portions of the Consent Order, DBR will, by March 31, 2009, suspend the additional $1,500,000 of the aforementioned administrative penalty.
Plaintiffs here seek injunctive relief primarily based on their contention that (1) the penalty provision contained in the Consent Order is in an amount in excess of the statutory authority of DBR (2) the provisions contained in paragraph 4 of the Consent Order requiring Beacon to distribute approximately $7 million to Eligible Policy Holders constitutes the imposition by DBR of damages and (3) the provisions contained in paragraph 5 of the Consent Order providing that "successful implementation by (Beacon) of its obligations pursuant to this Consent Order is deemed full and complete satisfaction of the rights and remedies of all parties with regard to all violations cited in the report" intrudes upon the province of the court. Plaintiffs contend that DBR has no power to determine damages; that the determination of damages exclusively is within the power of the Court; that Beacon through its consent to the Consent Order is attempting to obviate this litigation (see specifically (3) above) and further that the Consent Order fails to comply with the provisions of law.
The Court notes at the outset that while seeking injunctive relief specifically only as to Beacon, in fact, the requested injunctive relief constitutes a collateral attack upon *Page 4 
the Order entered in the proceedings before DBR. Plaintiffs here did not seek intervention or any other status in connection with the DBR proceedings and did not otherwise seek relief through proceedings before DBR. The Court further notes that Plaintiffs did not appeal the Consent Order until several days following the hearings on its Motion for Injunctive Relief before this Court. (see Heritage, et al. v. A. MichaelMarques, Director and the Beacon Mutual Insurance Co., C.A. No. 2007-4469, filed with the Office of the Clerk of the Providence County Superior Court on August 27, 2007).
Beacon and DBR respectively, through Beacon's objection to Plaintiffs motion and through DBR's Amicus Brief, as well as during oral argument, called into question Plaintiffs' standing in this proceeding to seek the relief presently sought as to the Consent Order in the DBR proceedings.
This Court noted above that Plaintiffs' motion constitutes a collateral attack by a non-party on an agreed-upon Consent Order between Beacon and its primary regulator, DBR, following an extended Market Conduct Examination coupled with a forensic audit. While Plaintiffs' motion seeks relief expressed in terms of precluding Beacon, a Defendant here, from performing certain of its obligations under the Consent Order it inferentially, in any event, also seeks to preclude DBR, a non-party, from enforcing the Consent Order and also requests that this Court" . . . order that the Consent Order be redrafted in compliance with the applicable laws of the State of Rhode Island."
No case has been called to the attention of the Court nor has the Court found any case where the implementation of a regulatory order (consensual or otherwise) has been enjoined where the regulator was not a party to the proceeding (this Court does not believe that the agreed-to appearance by DBR as Amicus here makes it a party to these *Page 5 
proceedings). Accordingly, the Court will not interfere with the regulatory process and will not grant the requested relief.
Even if the Court had determined that DBR was properly before it as a party, or had determined that under the circumstances here, Plaintiffs could properly proceed within this case to seek the requested relief, for the reasons hereinafter set forth their request for temporary and preliminary relief would have been denied.
In a proper case it is clear that a hearing justice may exercise his or her discretion in determining whether temporary or preliminary injunctive relief should issue. Our Supreme Court has declared: ". . . unless it is reasonably clear that the hearing justice illegally exercised his or her discretion, or has abused his or her discretion" the trial court's determination should control. Fund for CommunityProgress v. United Way, 695 A.2d 517, at 521 (R.I. 1997). Our Court in that same opinion reiterated the criteria to be used by the hearing justice in determining whether to grant such relief. The elements to be taken into consideration are 1. Irreparable harm for which no adequate legal remedy exists to restore Plaintiff to its rightful position 2. Reasonable likelihood of success on the merits (meaning a prima facie case) and 3. a balancing of the equities also taking into consideration the public interest in denying or granting the requested relief.
Turning now to those criteria, the Court notes that the United Way Opinion first discussed irreparable harm. In the case at bar Plaintiffs have the burden of establishing that but for the preliminary injunctive relief they seek, there is no adequate legal remedy by which to restore them to their rightful position. In the classic sense, where a Court can award money damages for the alleged wrongs, injunctive relief and equity should be avoided. Here, (even if class certification ultimately is granted) there is no reason to *Page 6 
believe that a money judgment would not be appropriate (perhaps coupled with some or indeed all of the equitable relief sought in Plaintiffs' eighth amended complaint as against Beacon's continuing its alleged wrongful practices) that however is substantially different than the equitable relief here sought which is to preclude (i) the payment of certain administrative penalties and (ii) distribution to eligible policy-holders of what all parties seem to agree would constitute premium refunds. This Court holds that Plaintiffs have not sustained their burden in connection with this element.
The next element to be reviewed is the reasonable likelihood of success on the merits of its claim. The Court assumes arguendo that the contents of the Report on the Market Conduct Examination of Beacon, dated April 20, 2007, make out a prima facie case on certain of Plaintiffs' claims for relief; accordingly, without intending to bind the parties hereto at this junction, the Court would find that the second criteria above set forth has been satisfied. That is to say, for the purposes of this decision, Plaintiffs have made out at least a prima facie case establishing their entitlement to success on the merits.
Finally, the Court turns to the issue of a balancing of the equities coupled with a consideration of the public interest in denying or granting the requested relief.
Plaintiffs point to paragraph 5 of the Consent Order and indicate through argument that they have attempted by resorting to legislative, executive, and indeed through the vehicle of this case judicial means to correct the wrongs complained of in their eighth amended complaint. They claim that the provisions of paragraph 5 of the Consent Order will preclude their ability to recover because it purports to constitute ". . . complete satisfaction of the rights and remedies of all parties with regard to all violations cited in the Report." *Page 7 
While that may be true (although the Court wonders how such an Order could be binding on "parties" not before the DBR) the Court notes that the issues raised in the Market Conduct Examination Report properly appear to fall within DBR's jurisdiction and this Court believes it must find that the public interest is best served by permitting the administrative process, the regulatory process, to proceed without interference except as otherwise set forth in the Administrative Procedures Act. DBR audits resulting in substantial fines and premium refunds to eligible policy-holders where warranted, clearly are in the public interest and outweigh the private interests of these Plaintiffs (and of the members of the Plaintiff class or classes which ultimately may be certified herein). Swift resolution of this lawsuit does not appear to be on the horizon. It may be that after a trial on the merits (assuming class certification of otherwise) that a determination favorable to the Plaintiffs will result in a monetary award coupled with appropriate injunctive relief. The magnitude of the monetary award purely is conjectural at this point. The Court believes that permitting an end run around the regulatory process; reducing the amount of the agreed penalty and withholding from eligible policy-holders approximately $7 million does not serve the public interest.
Counsel for the prevailing party shall prepare an Order consistent with this Decision which shall be entered after due notice to counsel for the Plaintiffs and counsel for the amicus. *Page 1